Robert E. Sabido, OSB No. 964168
robert@sabidolawllc.com
SABIDO LAW, LLC
9385 SW Locust Street
Tigard, Oregon 97223
Telephone: (971) 302-6236
Facsimile: (503) 974-1673

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JAMIE JOHN-CRANE, | Case No: |
| Plaintiff, | |
| v. | **NOTICE OF REMOVAL** |
| CONSUMER PORTFOLIO SERVICES, INC., | |
| Defendant. | |

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Consumer Portfolio Services, Inc. ("CPS") hereby removes to this Court the state court action currently pending in Oregon Circuit Court, Lane County, case number 25CV01205 ("the State Court Action"). In removing the State Court Action, CPS expressly reserves and does not waive its right to demand arbitration pursuant to the parties' existing contractual agreement.

**<u>Background</u>**

1.      On January 7, 2025, Plaintiff Jamie John-Crane ("Plaintiff") filed the State Court Action alleging that CPS had failed to perfect its lien on a Jeep Gladiator vehicle ("Vehicle"),

and therefore CPS "falsely asserts" a lien on the title.  (Ex. A, ¶¶ 5-6, 8).[1]  Based on those

allegations, Plaintiff claims (among other things) that CPS "falsely reported" "inaccurate and

derogatory information" about him to consumer reporting agencies, in violation of the Fair

Credit Reporting Act, 15 U.S.C. § 1681s-2 ("FCRA").  (Ex. A at ¶¶ 23-25).

2.    On or about January 8, 2025, CPS's registered agent received a copy of the

Complaint from Plaintiff via certified mail.  However, as of the filing of this Notice of Removal,

CPS has not been served with a Summons.  The Complaint constitutes "all process, pleadings

and orders served upon" CPS in the State Court Action to date.  28 U.S.C. § 1446(a).

### Timeliness of Removal

3.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is "filed

within 30 days after the receipt by [CPS], through service or otherwise, a copy of the initial

pleading setting forth the claim for relief upon which such action or proceeding is based."

### Removal Jurisdiction

4.    This action is properly removable under 28 U.S.C. § 1441(a) because this Court

has original jurisdiction under 28 U.S.C. § 1331, which provides that "district courts shall have

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

United States."

5.    Specifically, Plaintiff claims CPS "falsely reported" "inaccurate and derogatory

information" about her to consumer reporting agencies in violation of the FCRA.  (Ex. A at ¶¶

23-25).  Plaintiff thus asks the Court to "order" CPS "to correct all false and derogatory

information reported to credit reporting agencies by: (a) Updating the tradeline to reflect 'Paid in

---

[1]  Attached as Exhibit A to this Notice of Removal is a copy of the Complaint filed in the State Court Action ("Ex. A").

Full'; (b) Removing all negative or derogatory remarks with the account; [and] (c) Ceasing all future reporting of the account." (Ex. A at Prayer for Relief, ¶ 7.)[2]

6.      Accordingly, this is a civil action "arising under the Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331, and removal is appropriate under 28 U.S.C. §§ 1441 and 1446.

7.      Moreover, Plaintiff's putative state law claims for "declaratory judgment," "accounting," and "restitution" (Ex. A at ¶¶ 27-31) relate to and arise from the same events and circumstances that form the basis of her federal claims.  Accordingly, this Court has supplemental jurisdiction over those claims.  *See* 28 U.S.C. § 1367(a); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together.").

8.      Venue is proper in the United States District Court, District of Oregon, Eugene Division, because it is the district and division embracing the place whether the State court Act in pending (Lane County).  *See* 28 U.S.C. § 1441(a); LR 3-2(a)(3).

**<u>Notice to State Court and Plaintiff</u>**

9.      Pursuant to 28 U.S.C. § 1446(d), CPS is providing written notice of this removal to Plaintiff and filing a copy of the Notice of Removal with the Clerk of Lane County Circuit Court.

---

[2]  The FCRA "preempts all state laws regulating a furnisher's duty to provide accurate information."  *Thomas v. U.S. Bank, N.A.*, 2007 WL 764312, *8 (D. Or. Mar. 8, 2007) (citing 15 U.S.C. § 1681t(b)(1)(F)); *Anderson v. Bank of Am., N.A.*, 2014 WL 12776822, *11 (D. Or. July 29, 2014) ("[Section] 1681[t](b)(1)(F) appears to preempt all state law claims based on a creditor's responsibilities under § 1681s-2….") (*quoting Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1166-67 (9th Cir. 2009)).

**Reservation of Defenses**

10.     In filing this Notice of Removal, CPS does not waive any defenses or claims, including (but not limited to) any defenses based on jurisdiction, service, or statutes of limitation. Nor is CPS waiving its right to demand arbitration pursuant to the parties' existing contractual agreement.

Respectfully submitted,

SABIDO LAW, LLC

*/s/ Robert E. Sabido*

Robert E. Sabido, OSB No. 964168
robert@sabidolawllc.com
9385 SW Locust Street
Tigard, Oregon 97223
Tel: (971) 302-6236
Fax: (503) 974-1673

PILGRIM CHRISTAKIS LLP

Ke Liu (*Pro Hac Vice* Application Forthcoming)
kliu@pilgrimchristakis.com
One South Dearborn Street, Suite 1420
Chicago, Illinois 60603
Tel: (312) 445-0488

*Attorneys for Defendant Consumer Portfolio Services, Inc.*

# Exhibit A

CERTIFIED MAIL NO. 1021 2920 0250 2 1000 0843 21

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF LANE

FILED

2025 JAN -7 PM 3: 13

CIRCUIT COURT OF OREGON
FOR LANE COUNTY

Jamie John-Crane,

    Plaintiff

Vs.

Consumer Portfolio Services, Inc.,

    Defendant

Case No.: **25CV01205**

**Declaratory Judgement, Equitable**

**Relief, and Restitution**

---

COMES NOW, Plaintiff, Jamie John-Crane, appearing pro se, and files this Verified Complaint against Defendant, Consumer Portfolio Services, Inc. ("CPS"), and alleges as follows:

### I. PARTIES

1. Plaintiff is a resident of Lane County, Oregon, and the lawful owner of the motor vehicle described herein.

2. Defendant, Consumer Portfolio Services, Inc (hereafter CPS)., is a foreign business corporation registered with the Oregon Secretary of State, Registry Number 361566-85. CPS's principal place of business is located at 3800 Howard Hughes Parkway, Suite 1400, Las Vegas, NV 89169. CPS's mailing address is 19500 Jamboree Road, Irvine, CA 92612, and its Oregon Registered Agent is CT Corporation System, located at 780 Commercial St SE, Suite 100, Salem, OR 97301.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to ORS 28.010 et seq., as this action seeks declaratory judgment and equitable relief regarding Defendant's lien, fraudulent claims to the subject vehicle.

4. Venue is proper in this Court pursuant to ORS 14.080(1), as the vehicle in question is located in Lane County, and Plaintiff resides in this County.

### III. FACTUAL ALLEGATIONS

**A. Vehicle Description and Ownership**

5. Plaintiff is the lawful owner of the following motor vehicle:

Year: 2023 Make: Jeep Model: Gladiator VIN: 1C6HJTFG2PL522621

6. Plaintiff conducted a UCC-11 search with the Oregon Secretary of State, confirming that no UCC-1 Financing Statement has been filed by Defendant to perfect its lien, rendering the lien unperfected, invalid, and unenforceable. **(EXHIBIT 1)**

7. On October 4, 2024, Plaintiff lawfully conveyed the vehicle into an irrevocable Trust, which now holds the current UCC-1 Financing Statement filed December 2, 2024 for the vehicle, the Fee Simple Absolute Title, Equitable Title, and the vehicle has been registered within the Trust. **(EXHIBIT 2)**

**B.** On October 25, 2024, Plaintiff filed a UCC-1 Financing Statement with the California Secretary of State (Exhibit 8) asserting legal and equitable ownership over the note and the collateral associated with the vehicle. The UCC-1 designates Plaintiff as the Grantor and Registered Owner of the obligation, with equitable title to the collateral and proceeds derived therefrom. Defendant is listed as the Trustee responsible for administering the obligation. Despite this designation, Defendant has failed to fulfill its fiduciary duties as Trustee, including validating the debt, providing accounting and providing chain of title, rendering its claims over the collateral invalid and unenforceable.

**C. CPS's Fraudulent Claims:**

8. CPS falsely asserts a lien on the Oregon Certificate of Title, as reflected in the titled issued by the Oregon Department of Motor Vehicles, CPS however has failed to perfect its security interest under ORS Chapter 79 (UCC Article 9).

9. CPS cannot demonstrate lawful ownership of the note associated with the retail installment contract because:

    a. The note has been pooled as an Asset Backed Security, and is being publicly traded within the CUSIP 722008307, ISIN US7220083072, PIMCO Investment Grade Credit Bond Fund, severing any enforceable interest under ORS 73.0301 (UCC Article 3). **(EXHIBIT 3)**

    b. There is no evidence to support that CPS can produce the original wet-ink signature Note, as required under ORS 73.0301, and instead CPS relies on a forged DocuSign electronic copy, that Plaintiff did not execute.

    c. CPS's own prospectus, filed with the U.S. Securities and Exchange Commission (SEC), confirms that CPS does not lend money but instead acquires consumer contracts for securitization.

    d.   Plaintiff retains a color photocopy of the original wet-ink Note, which was certified and witnessed by Plaintiff's notary at the time of signing. There is no evidence to support that CPS possess the original wet-ink Note and cannot demonstrate any right to enforce the document.

    e.   CPS's SEC Prospectus explicitly states: *"The notes <u>are not</u> secured by any collateral or lien."* This statement directly contradicts CPS's assertion of a lien on Plaintiff's vehicle and demonstrated that the notes CPS securitizes are unsecured financial instruments. **(EXHIBIT 4)**

    f.   CPS's SEC Prospectus further confirms: *"We are not required to establish or maintain a sinking fund to provide for payments on the notes."* This highlights CPS's speculative business practices and severs any connection between Plaintiff's vehicle and the securitized note.

10. Both CPS and the Dealership where the vehicle was acquired (Gladstone Mitsubishi) have both admitted in writing that they did not provide Plaintiff with any financing or loan regarding the 9/27/24 credit inquiry. Specifically:

    a.   CPS Sent a letter "Notice delivered or mailed on October 21, 2021" corelating to the 9/27/24 credit application submitted by Gladstone Mitsubishi confirming *"this letter is to advise you that we have <u>declined to finance your automobile</u> purchase. We are <u>unable to offer you credit</u> on the terms that you requested..."* **(EXHIBIT 5)**

    b.   Gladstone Mitsubishi, sent a letter dated 10/29/24 confirming that they *"cannot provide credit to you at this time or that we cannot provide credit on the terms you requested. You should understand that as a dealer, we <u>generally sell or lease vehicles on credit only if a third-party bank or finance company will agree to buy the contract from us on terms that are financially acceptable to us. Regrettably, we could not do that in this instance.</u>"* **(EXHIBIT 6)**

11. CPS has monetized the Note bearing Plaintiff's name through securitization, pooling, and sale to investors, generating substantial financial benefits including dividends, interest payments, and proceeds from asset-backed securities (ABS). Plaintiff, as the lawful creator and Registered Owner of the Note, retains all rights to these proceeds under equitable principals of restitution and unjust enrichment.

12. These admissions establish that CPS provided no consideration and cannot demonstrate a valid claim of title, both of which are required to enforce a note or lien.

13. CPS's actions are fraudulent, deceptive, and constitute bad faith attempts to assert unlawful claims over Plaintiff's property.

14. Under ORS 73.0301 (UCC Article 3) and the best evidence rule (ORS 40.550), CPS must produce the original wet-ink Note to assert any rights under the alleged debt instrument. Copies are inadmissible unless authenticated by comparison to the original.

15. **Plaintiff demands suppression of any electronic or photocopied versions of the Note presented by CPS unless the original wet-ink signature Note is produced for inspection and verified against Plaintiff's certified copy.**

D. **CPS's History of Misconduct:**

16. CPS has well-documented history of engaging in deceptive practices and violations of consumer protection laws:

   a. FTC Enforcement Action (2014): CPS was fined over $5.5 million by the Federal Trade Commission for unlawful auto loan servicing, deceptive debt collection practices, and violations of the Fair Credit Reporting Act. The FTC found that CPS harassed consumers, misrepresented fees, and reported inaccurate credit information. **(EXHIBIT 7)**

   b. Hollman v. CPS (2022): In this case, CPS was accused of violating consumer protection laws, including the Maryland Consumer Debt Collection Act, for unlawfully repossession practices and deceptive debt collection.

   c. Shareef v. CPS (2020): CPS was accused of violating the Truth in Lending Act, Fair Debt Collection Practices Act, and Fair Credit Reporting Act through deceptive practices and unlawful credit reporting.

17. These prior cases and regulatory actions demonstrate a pattern of fraudulent conduct by CPS, which is directly relevant to its actions in the present case.

E. **Administrative Process and CPS's Acquiescence:**

18. Plaintiff initiated a lawful administrative process to resolve this dispute, including:

   a. Notice of Correction/Rescission and Request for Verification, sent Certified Mail No. 70223330000164453278.

    b.   Filing a UCC1 Financing Statement on the Corrected Note redeeming in Lawful Money Pursuant to 12 USC 411. (EXHIBIT 8)

    c.   Formal Notice of Dispute and Prohibition Against Unauthorized Reporting, sent Certified Mail No. 70212720000253999710 via Notary Presentment

    d.   CFPB Complaint, No. 241113-16947759 sent to CPS.

    e.   Request for Documentation, Certified Mail No. 70212720000253999765

    f.   CFPB Complaint, No. 241103-16788924 sent to CPS

    g.   Affidavit of Fact, request for rebuttal, Certified Mail No. 70212720000253999796 via Notary presentment.

    h.   Public Notice of Fiduciary Appointment (**EXHIBIT 9**)

    i.   Public Notice of Vehicle Conveyance into Trust (**EXHIBIT 10**)

    j.   Certificate of Protest, Fiduciary Appointment and Authorization, Estoppel by Acquiescence Notice Letter, Sent via Notary Presentment Registered Mail No. RF321318490US.

    k.   Whistleblower Complaint and Supporting Evidence Regarding RICO Violations, Tax Evasion and Unjust Enrichment, to IRS Whistleblower Office, Attorney General, CPS. (**EXHIBIT 11**)

19.   Plaintiff issued a final Notice of Estoppel via notary presentment to Defendant's CEO, via registered mail (No. RF321318490US), demanding resolution of the matter which has gone unanswered.

20.  Public Notice: Plaintiff published a public notice in Tulsa World Newspaper on November 27, 2024, appointing Defendant's CEO as fiduciary to zero the account and return all proceeds. Defendant failed to contest or rebut this notice, thereby acquiescing to its terms under ORS 73.0505 and UCC Article 3.

21.  Public Notice: Plaintiff published a public notice in Tulsa World Newspaper on December 4, 2024, conveying the vehicle into Trust, identifying it as Trust Property and under protection of the Trust.

22.  Under ORS 73.050 and UCC Article 3, Defendant's failure to respond to Plaintiff's notarized demands, public notices, and fiduciary appointments constitutes tactic agreement to Plaintiff's claims and estops Defendant from asserting contradictory positions. Defendant has had multiple opportunities to rebut Plaintiff's claims and has failed to do so, further validating Plaintiff's position.

F.  CPS's Credit Reporting Misconduct:

23.  CPS has reported inaccurate and derogatory information regarding Plaintiff to consumer credit reporting

agencies, causing harm to Plaintiff's credit reputation and standing in the business community.

24.  Specifically, CPS has falsely reported that Plaintiff owes a debt related to their account, despite:

a.  CPS Providing no financial or consideration, as confirmed in their own correspondence, and

Perspectus filed with the SEC.

b.  CPS's failure to establish a valid chain of title or demonstrate any enforceable rights.

c.  CPS's false reporting has caused Plaintiff to suffer financial harm, including denial of credit

applications, increased interest rates, and reputational damage. Plaintiff seeks correction of all

derogatory tradelines and removal of any inaccurate reporting to restore Plaintiff's financial

standing.

25.  CPS's false reporting constitutes a violation of:

a.  ORS 646.608(1): Unlawful Trade Practices Act, prohibiting the dissemination of false information

to harm a consumer.

b.  15 USC 1681s-2: Fair Credit Reporting Act (FCRA), which requires furnishers of credit

information to report only accurate and complete information.

26.  CPS's actions have caused Plaintiff has suffered and caused substantial financial harm including:

a.  Damage to creditworthiness, impacting Plaintiff's ability to secure financing or favorable

terms.

b.  Emotional distress, humiliation, and reputational harm caused by CPS's derogatory credit

remarks.

### IV. LEGAL CLAIMS

**COUNT I: Declaratory Judgement:**

27.  Plaintiff seeks a declaratory judgment under ORS 28.010 that:

a.  Defendant's lien is invalid and unenforceable.

b.  Defendant has no standing to enforce any claims under the Note.

  c. Plaintiff is entitled to clear title to the vehicle, free of Defendant's claims.

28. Plaintiff further asserts that the UCC-1 Financing Statement Filed on October 25, 2024 establishes Plaintiff as the lawful owner and holder of the Note and collateral. CPS has failed to fulfill its fiduciary obligations, rendering its lien and claims over the collateral invalid.

## COUNT II: Equitable Relief – Demand for Accounting:

29. Require Defendant to provide full accounting of all transactions involving the Note bearing Plaintiff's name, including but not limited to:

  a. The securitization of the Note.

  b. Proceeds form any pooled CUSIP linked to the Note bearing Plaintiff's name.

  c. Interest, dividends, and principal payments collected or paid to CPS linked to the Note bearing Plaintiff's name.

  d. Pooling and Serving Agreement (PSA) or equivalent documentation, including all assignments or transfers of the Note bearing Plaintiff's name.

  e. Dividends.

  f. Interest Payments.

  g. Principal Payments.

  h. The current Minor CUSIP associated with the Note bearing Plaintiff's name.

## COUNT III: Restitution and Credit Reporting Corrections:

30. Plaintiff is entitled to restitution of all interest payments, proceeds, dividends, and other gains derives from the note and collateral realized by Defendant or its assigns, as confirmed by the UCC-1 Financing Statement filed on October 25, 2024. The UCC-1 affirms Plaintiff's equitable ownership of all current and future payments derived from the note. Defendants failure to remit these proceeds constitutes unjust enrichment and violation of Plaintiff's equitable rights.

31. Plaintiff demands that CPS relinquish possession, claims and ownership of the Minor CUSIP associated with the Note bearing Plaintiff's name into Plaintiff's brokerage account, under Plaintiff's exclusive control, within 30 days of judgment.

32.  Plaintiff demands that CPS:

    a.  Immediately update Plaintiff's credit report to reflect "Paid In Full".

    b.  Immediately remove all derogatory or negative remarks associated with the alleged account.

    c.  Immediately cease all future credit reporting activity related to the alleged account.

## V. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court:**

1.  Declare that Defendant's lien is invalid and unenforceable under Oregon Law.

2.  Declare that Plaintiff is entitled to clear title to the vehicle, free of any claims by Defendant.

3.  Order Defendant to provide a full accounting of all proceeds, dividends, interest payments, derived from the Note, including all securitization transactions, Pooling and Service Agreements or equivalent, assignments or transfers.

4.  Order Defendant to transfer the Minor CUSIP associated with the Note, to Plaintiff's brokerage account within 30 days.

5.  Award Plaintiff restitution of the full value of the Note and all proceeds generates through its securitization.

6.  Direct the Oregon Department of Motor Vehicles to issue a new certificate of title reflecting Plaintiff as the sole owner, free of Defendant's claims.

7.  Order Defendant to correct all false and derogatory information reported to credit agencies by:

    a.  Updating the tradeline to reflect "Paid In Full"

    b.  Removing all negative or derogatory remarks associated with the account.

    c.  Ceasing al future reporting of the account.

8.  Grant such other and further relief, both legal and equitable, as this Court deems just and proper.

Date: _1·7·24_

Respectfully Submitted,

_Jamie John-Crane_

Jamie John-Crane, Plaintiff

1292 HIGH ST #1161
EUGENE OR 97401

# Oregon
# Secretary of State

Welcome Publ...

Corporation Home

UCC Home

UCC Search

Contact us

Sign Out

### Search Results

**Search Results Include Filings Through 12/30/2024**

| | |
|---|---|
| **Searched By:** | Debtor |
| **Requested Individual Name:** | JOHN-CRANE, JAMIE |
| **Formatted First Name:** | JAMIE |
| **Formatted Middle Name:** | |
| **Formatted Last Name:** | JOHNCRANE |

No file entries

Notice: Information presented on this Web site is collected, maintained, and provided for the convenience of the reader. While every effort is made to keep such information accurate and up-to-date, the Secretary of State does not certify the authenticity of information herein that originates from third parties. The Secretary of State shall under no circumstances be liable for any actions taken or omissions made from reliance on any information contained herein from whatever source or any other consequences from any such reliance.

Back    Search

3.1.2.0



 

U240092184534

B3232-7481 12/02/2024 12:51 PM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
|---|
| **-FILED-** |
| File No. U240092184534 |
| Date Filed 12/2/2024 |

### Submitter Information:

| | |
|---|---|
| Contact Name | JAMIE JOHN-CRANE |
| Organization Name | JOHN-CRANE PRIVATE BANK E&T |
| Phone Number | |
| Email Address | |
| Address | 1292 HIGH STREET #1161 |
| | EUGENE, OR 97401 |

### Debtor Information:

| Debtor Name | Mailing Address |
|---|---|
| KIDS WITH ADULT MONEY TRUST (1) | 514 AMERICAS WAY #22153 |
| | BOX ELDER, SD 57719 |

### Secured Party Information:

| Secured Party Name | Mailing Address |
|---|---|
| JOHN-CRANE PRIVATE BANK E&T | 1292 HIGH STREET #1161 |
| | EUGENE, OK 97401 |

**Indicate how documentation of Collateral is provided:**
Entered as Text

**Description:**
This financing statement perfects the Security Interest of Kids With Adult Money Trust (1) in the 2023 Jeep Gladiator. VIN: 1C6HJTFG2PL522621. Color: Black. Kids With Adult Money Trust (1) holds a first priority security interest in the vehicle and all associated rights, including financial instruments. Kids With Adult Money Trust (1) as owner, with Hill Valley Ministries & Jamie John-Crane acting as Trustees, hold all legal and equitable titles for this vehicle. This vehicle is pledged as collateral under the Trust's terms & governed by the laws of the Trust. John-Crane Private Bank E&T holds a valid and enforceable lien on this vehicle. The property is exempt from levy, and liened at a sum of $200,000, and is held in a private conveyance of the Secured Party. Before the property can be conveyed, disbursed, exchanged, sold, forfeited, gifted, transferred, surrendered, sold, destroyed, disposed, or removed from the Secured Party's possession, the Secured Party must be settled in full. Any liens, claims, or judgements against the property are now invalid as the vehicle is under the protection and ownership of the Trust.

**Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:**
Held in a Trust

**Select an alternate Financing Statement type:**
Not Applicable

**Select an additional alternate Financing Statement type:**
Not Applicable

**Select an alternative Debtor/Secured Party designation for this Financing Statement:**
Not Applicable

**Optional Filer Reference Information:**
INTERNAL REFERENCE NO. GLA20231004

**Miscellaneous Information:**
Ownership of the vehicle was transferred from Jamie John-Crane to Kids With Adult Money Trust (1) on Oc...
Any claims, liens, or encumbrances must comply with applicable law and be substantiated with lawful docu...
Trust reserves all rights.

**Search to Reflect:**

EXHIBIT
#2

Pg 1 of 4

Page 1 of 2

# CONVEYANCE OF VEHICLE
### This is a Fee Simple Absolute Title
### No. GLAD20231004
### Kids With Adult Money Trust (1)

This agreement is made on this 4th day of October 2024, and entered into between Jamie John-Crane, hereinafter referred to as the Grantor, and Kids With Adult Money Trust (1), hereinafter referred to as the Grantee Trustee.

**Agreement Parameters:**

1. **Purpose of Conveyance:** The Grantor irrevocably transfers all legal and equitable interest in the following vehicle to the Kids With Adult Money Trust (1) as part of its assets, to be held, administered, and managed for the sole benefit of the Trust's Beneficiaries:

     **Make and Model:** 2023 Jeep Gladiator High Altitude
     **VIN:** 1C6HJTFG2PL522621

2. **Nature of the Conveyance:** This conveyance is made as a bona fide transaction and constitutes a gift, transferring the vehicle without any liens, encumbrances, or compensation.
     - a.  The Trust now holds both Legal and Equitable title to the vehicle, with the Trustee having sole authority to administer and manage the asset.

3. **Irrevocable and Absolute Transfer:** This transfer is irrevocable and absolute. The Grantor relinquishes all rights, claims, or authority over the vehicle, which is now under the exclusive ownership of the Trust.

4. **Legal Standing and Claims:** The property is conveyed as part of a Fee Simple Absolute Title. Any claims, liens, judgements, or encumbrances asserted against the Grantor, related to the vehicle, are now null, void, and unenforceable, as the vehicle is under the protection and ownership of the Trust.

5. **Obligation Satisfied:** The vehicle obligation has been satisfied in lawful money pursuant to 12 USC 411, and applicable provisions of the Uniform Commercial Code, including UCC 3-603 and 3-311.
     - a.  **NO** individual, entity, or third party holds a valid claim, interest, or lien against the vehicle. Any assertion of claims must be substantiated with lawful documentation and must comply with the provisions and requirements of the Trust's governing documents, as well as any applicable federal or state laws.

**Terms and Conditions:**

1. The Grantee/Trustee agrees to accept the vehicle and administer it in accordance with the terms of the Trust.
2. The vehicle now belongs to the Trust as its sole and exclusive property, with the Trust holding both legal and equitable title for the benefit of its named beneficiaries.
3. The Grantor affirms that the vehicle is being transferred as a gift and that no payment or compensation is required or expected.
4. The vehicle is now managed exclusively by the Trust. Any claims, liens, or judgements to the individual Jamie John-Crane related to this vehicle are now invalid as the vehicle is under the protection, control, and ownership of the Trust.

Grantor:

Jamie John-Crane

Date: October 4, 2024



Trustee/Grantee:

**Matthew Hecker, Trustee**
on behalf of Kids With Adult Money Trust
Date: October 4, 2024

EXHIBIT
#2
pg 2 of 4

# Conveyance in Certificated Security

## THIS IS A FEE SIMPLE ABSOLUTE TITLE
Kids With Adult Money Trust (Irrevocable)
(Real Estate)

I, the undersigned, being of lawful age and being first duly sworn under oath, depose and state that I am familiar with the facts recited, and the party named in said Birth Certificate is the same party as one of the owners named in said "Certificated Security".

The combination of a duly certified "Certificated Security" and attached Claim is what is known as a "counter Security." [From the perspective of *trust law*, I am now the Security holder-in-due course of the **Security** to JAMIE CHRISTINA JOHN-CRANE and from the perspective of *commercial law* I am now the real party in interest and Security holder-in-due course to the Certificated **Security** to the Precedent Vested Landed Estate JAMIE CHRISTINA JOHN-CRANE. I am an "Equitable owner with Equitable Interest".

## STATEMENT OF FACTS

1.      I jamie christina john-crane being of legal age and capacity of being of sound mind, state for the record under penalty of perjury that, I hereby Donate the Property Attached with the "Certificated Security-In-Trust" in the value of $200,000,000.00 to The **Kids With Adult Money Trust** to be placed into The **Kids With Adult Money Trust** as an asset and beneficial, to the Original equitable owner, Jamie Christina John-Crane and her heirs.

**Property Legal Description:**
Jamie Christina John-Crane Bond Number: 87-015316
Tax ID: XXX-XX-1982
Place of Birth: OREGON

Date of Birth: 17 May 1987





1

EXHIBIT
#2
Pg 3 of 4

2. The United States. Union states and STATE OF OREGON would need to show proof of claim how they have any interest in the Precedent Vested Landed Estate JAMIE CHRISTINA JOHN-CRANE. The United States, Union States and STATE OF OREGON has no contracts with ___The Kids With Adult Money Trust___ and. thereby would make any and **all** charges. claims. judgments. levy's. warrants. indictments or seizures: "fraudulent" and a "trespass" on the property of **The Kids With Adult Money Trust.** The United States, Union States and STATE OF Oregon therefore cannot file any judgments or any lien on a "Holder-in-Due Course".

2.    Therefore.   __Jamie Christina John-Crane__    demands proof of claim as. **The Kids With Adult Money Trust** is the paramount security interest holder in all property and collateral. both registered and unregistered. corporeal and incorporeal. real property. mixed property and chattel property belonging to JAMIE CHRISTINA JOHN-CRANE.

JAMIE CHRISTINA JOHN-CRANE Bond# 87-015316 Tax ID# XXX-XX-1982 This Property is now the Property of **The Kids With Adult Money Trust**. This is part of a FEE SIMPLE ABSOLUTE ESTATE and has been conveyed into an **Irrevocable Trust. Jamie Christina John-Crane is the holder of the equitable Certificated Security.** This conveyance Must be acknowledged as a Registry to the trust. The Cestui que Trust/Franchise/Individual entity of JAMIE CHRISTINA JOHN-CRANE is parcel to **The Kids With Adult Money Trust.**

**I Declare under penalty and perjury under the laws of the United States of America that the foregoing is true and correct. 28 USC 1746**

**Non-citizen National of the United States Native Oregonian**

Date _July 21, 2021_

_John-Crane: Jamie Christina_

John-Crane, Jamie Christina

Birth Name (of Estate) JAMIE CHRSITINA JOHN-CRANE



EXHIBIT
#4
Pg 4 of 4

2

## Your CUSIP Results are as follows:

**JAMIE C JOHN CRANE (ACCT 0024281883 [AUTO ACCOUNT])**
**PIMCO Investment Grade Credit Bond Fund**

| | |
|---|---|
| Symbol: | PBDAX |
| CUSIP: | 722008307 |
| ISIN: | US7220083072 |
| Inception Date: | 07/30/2004 |
| Net Assets: | $12,820,413,000.00 as of 8/25/2024 |

**A little about the Fund:**

PIMCO Investment Grade Credit Bond Fund seeks maximum total return consistent with preservation of capital and prudent investment management by investing in investment grade corporate fixed income securities. The Fund's average portfolio duration is three to seven years. The Fund's benchmark is Bloomberg U.S. Credit Index.

Admin Notes: There could be additional trusts with an interest in this security.



EXHIBIT
#3
Pg 1 of 1

$50,000,000

> This filing is made pursuant to Rule 424(b)(2) under the Securities Act of 1933 in connection with Registration No. 333-272653

**Consumer Portfolio Services, Inc.**
Three and Six Month Renewable Unsecured Subordinated Notes
One, Two, Three, Four, Five and Ten Year Renewable Unsecured
Subordinated Notes

We are offering our renewable unsecured subordinated notes to new purchasers and existing noteholders. We are offering the notes for cash and as renewals of previously-issued or to be issued notes, up to a maximum of $50,000,000 in aggregate principal amount (inclusive of renewals). As of the date of this prospectus supplement, we are offering the notes with maturities ranging from three months to ten years. However, depending on our capital needs, notes with certain terms may not always be offered. We will establish interest rates on the notes offered in this prospectus supplement from time to time in interest rate supplements to this prospectus supplement. Our filing such an interest rate supplement will not affect the interest rates applicable to any notes previously sold.

The notes are unsecured obligations and your right to payment is subordinated in right of payment to substantially all of our existing and future indebtedness, other than our issued and outstanding renewable unsecured subordinated notes, each of which is *pari passu* in right of payment with the notes offered hereby. As of December 31, 2023, and June 30, 2024 we had approximately $2,549 million and $2,917 million, respectively, of debt outstanding that is senior to the notes, all of which was issued by our consolidated special purpose entities. Including accounts payable and accrued expenses, we had approximately $2,612 million of outstanding obligations senior to the notes, as of December 31, 2023, and $2,984 million as of June 30, 2024.

Upon maturity, your notes will be automatically renewed for the same term as your maturing notes. The interest rate will be what we are then offering to other investors with similar aggregate note portfolios for notes of the same term, as described on the next page or specified in the most recently filed interest rate supplement, unless we elect not to have your notes renewed or unless you notify us within 15 days after the maturity date for your notes that you want your notes repaid. If notes of the same term are not then being offered, the interest rate upon renewal will be the rate specified by us on or before maturity or, if no such rate is specified, the rate of the existing note. The interest rate on your renewed note may differ from the interest rate applicable to your note during the prior term. After giving you thirty days' advance notice, we may redeem all or a portion of your notes for their original principal amount plus accrued and unpaid interest. You also may request us to repurchase your notes prior to maturity; however, unless the request is due to your death or total permanent disability, we are currently prohibited by contract from making any such repurchases. See "Description Of The Notes – Redemption or Repurchase Prior To Stated Maturity – Repurchase At Request of Holder."

We will market and sell the notes directly to the public. The notes will not be listed on any securities exchange or quoted on Nasdaq or any over the counter market. We do not intend to make a market in the notes and we do not anticipate that a market in the notes will develop. There will be significant restrictions on your ability to transfer or resell the notes. We have not requested a rating for the notes; however, third parties may independently rate them.

The notes are not certificates of deposit or similar obligations of, and are not guaranteed or insured by, any depository institution, the Federal Deposit Insurance Corporation, the Securities Investor Protection Corporation or any other governmental or private fund or entity. Investing in the notes involves risks, which are described in "Risk Factors" beginning on page 10 of this prospectus supplement.

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or determined if this prospectus is truthful or complete. Any representation to the contrary is a criminal offense.

|  | Per Note | Total |
|---|---|---|
| Public offering price | 100.00% | 100.00% |
| Selling agent commissions | none | none |
| Proceeds to CPS, before expenses | 100.00% | 100.00% |

See "Plan of Distribution" for a description of anticipated expenses to be incurred in connection with our offering and selling the notes. There will be no underwriting discount. We are not required to sell any specific number or dollar amount of notes in order to accept subscriptions.

The date of this Prospectus Supplement is August 14, 2024

We will issue the notes in book-entry or uncertificated form. Subject to certain limited exceptions, you will not receive a certificated security or a negotiable instrument that evidences your notes. We will deliver written confirmations to purchasers of the notes. Computershare Trust Company, National Association, St. Paul, Minnesota, will act as trustee for the notes.



EXHIBIT
# 4
Pg 1 of 5

## PROSPECTUS SUMMARY

*This summary highlights selected information from this prospectus supplement and from our reports filed with the SEC, and may not contain all the information that may be important to you. You should read the entire prospectus supplement and the other information that is incorporated by reference into this prospectus supplement before making an investment decision. Certain industry terms that we use are defined in the glossary, which begins on page 45.*

*This prospectus supplement is supplement to a base prospectus that is included in a registration statement we filed with the SEC, file number 333-272653, and should be delivered with and read in conjunction with that base prospectus. For convenience, we refer hereafter to the base prospectus and this prospectus supplement together as the prospectus.*

### CPS

We are a specialty finance company. Our business is to purchase and service retail automobile contracts originated primarily by franchised automobile dealers and, to a lesser extent, by select independent dealers in the United States in the sale of new and used automobiles, light trucks and passenger vans. Through our automobile contract purchases, we provide indirect financing to the customers of dealers who have limited credit histories or past credit problems, who we refer to as sub-prime customers. We serve as an alternative source of financing for dealers, facilitating sales to customers who otherwise might not be able to obtain financing from traditional sources, such as commercial banks, credit unions and the captive finance companies affiliated with major automobile manufacturers. In addition to purchasing installment purchase contracts directly from dealers, we have also acquired installment purchase contracts in four merger and acquisition transactions, and purchased or originated immaterial amounts of loans secured by vehicles. In this prospectus, we refer to all of such contracts and loans as "automobile contracts."

We were incorporated and began our operations in March 1991. We consist of Consumer Portfolio Services, Inc. and subsidiaries (collectively, "we," "us," "CPS" or "the Company"). From inception through December 31, 2023, we have originated a total of approximately $21.3 billion of automobile contracts from dealers. In addition, we acquired a total of approximately $822.3 million of automobile contracts in mergers and acquisitions in 2002, 2003, 2004 and 2011. Recent contract purchase volumes and managed portfolio levels are shown in the table below. Managed portfolio comprises both contracts we owned and those we were servicing for non-affiliates.

### Contract Purchases and Outstanding Managed Portfolio

| Period | $ in thousands | |
| --- | --- | --- |
| | Contracts Purchased in Period | Managed Portfolio at Period End |
| 2019 | $ 1,002,782 | $ 2,416,042 |
| 2020 | 742,584 | 2,174,972 |
| 2021 | 1,146,321 | 2,249,069 |
| 2022 | 1,854,385 | 3,001,308 |
| 2023 | 1,357,752 | 3,194,623 |
| Six months ended June 30, 2024 | 778,185 | 3,378,885 |

In May 2021 we began purchasing some contracts for immediate sale to a third-party to whom we refer applications that don't meet our lending criteria. We service all such contracts on behalf of the third-party. We earn fees for originating the receivable and also servicing fees on active accounts in the third-party portfolio. For the twelve months ended December 31, 2023 and the six months ended June 30, 2024, we originated $100.8 million and $23.4 million, respectively, under this third-party program. As of June 30, 2024, our managed portfolio includes $205.6 million of such third-party receivables.

EXHIBIT #4  PG 2 of 5

The above described negative economic factors, as well as others, have also historically resulted in decreased consumer demand for motor vehicles, which may result in an increase in the inventory of used motor vehicles and depress the price at which repossessed motor vehicles may be sold or delay the timing of those sales. If the default rate on our receivables increases and the price at which the vehicles may be sold at auction declines, our financial position, liquidity, results of operation and our ability to enter into future financing transactions may be adversely affected.

**If interest rates rise, our results of operations may be impaired.**

Our principal means of financing our portfolio of automobile contracts is to issue asset-backed notes in securitizations. The interest payable on such notes is our largest expense. Although such expense is fixed with respect to issued securitization trust debt, the terms of future securitizations may vary.

The credit spread between the interest rates payable on our securitization trust debt and the rates payable on risk-free investments has varied. The Federal Reserve increased interest rates multiple times in 2022 and 2023. As a result, we have experienced increased interest expense in 2023. If interest rates on risk-free debt continue to increase, or if our spread above risk-free rates continue to increase, or both, we would expect a continued increase in interest expense. If interest rates in general should continue to rise, our expenses would likewise continue to rise, which could have a material adverse effect on our financial position, liquidity, results of operation and our ability to enter into future financing transactions.

**If we are unable to compete successfully with our competitors, our results of operations may be impaired.**

The automobile financing business is highly competitive. We compete with a number of national, regional and local finance companies. In addition, competitors or potential competitors include other types of financial services companies, such as commercial banks, savings and loan associations, leasing companies, credit unions providing retail loan financing and lease financing for new and used vehicles and captive finance companies affiliated with major automobile manufacturers, such as Ford Motor Credit Company, LLC and General Motors Financial Company, Inc. Many of our competitors and potential competitors possess substantially greater financial, sales, technical, personnel and other resources than we do, including greater access to capital markets for unsecured commercial paper and investment grade rated debt instruments, and to other funding sources which may be unavailable to us. Moreover, our future profitability will be directly related to the availability and cost of our capital relative to that of our competitors. Many of these companies also have long-standing relationships with automobile dealers and may provide other financing to dealers, including floor plan financing for the dealers' purchases of automobiles from manufacturers, which we do not offer. There can be no assurance that we will be able to continue to compete successfully and, as a result, we may not be able to purchase automobile contracts from dealers at a price acceptable to us, which could result in reductions in our revenues or the cash flows available to us.

**If our dealers do not submit a sufficient number of suitable automobile contracts to us for purchase, our results of operations may be impaired.**

We are dependent upon establishing and maintaining relationships with a large number of unaffiliated automobile dealers to supply us with automobile contracts. During the year ended December 31, 2023, no single dealer accounted for as much as 2% of the automobile contracts we purchased. The agreements we have with dealers to purchase automobile contracts do not require dealers to submit a minimum number of automobile contracts for purchase. The failure of dealers to submit automobile contracts that meet our underwriting criteria could result in reductions in our revenues or the cash flows available to us, and, therefore, could have an adverse effect on our results of operations.

**If a significant number of our automobile contracts experience defaults, our results of operations may be impaired.**

We specialize in the purchase and servicing of automobile contracts to finance automobile purchases by sub-prime customers, those who have limited credit history, low income, or past credit problems. Such automobile contracts entail a higher risk of non-performance, higher delinquencies and higher losses than automobile contracts with more creditworthy customers. While we believe that our pricing of the automobile contracts and the underwriting criteria and collection methods we employ enable us to control, to a degree, the higher risks inherent in automobile contracts with sub-prime customers, no assurance can be given that such pricing, criteria and methods will afford adequate protection against such risks.

EXHIBIT
#4
Pg 3 of 5

## DESCRIPTION OF THE NOTES

**General.** The renewable unsecured subordinated notes we are offering will represent subordinated, unsecured debt obligations of CPS. We will issue the notes under an indenture between us and Computershare Trust Company, National Association, as successor trustee to Wells Fargo Bank, National Association. The terms and conditions of the notes include those stated in the indenture and those made part of the indenture by reference to the Trust Indenture Act of 1939. The following is a summary of the material provisions of the indenture. For a complete understanding of the notes, you should review the definitive terms and conditions contained in the indenture, which include definitions of certain terms used below. A copy of the indenture has been filed with the SEC as an exhibit to the registration statement of which this prospectus is a part and is available from us at no charge upon request.

The notes will be subordinated in right of payment to the prior payment in full of all our secured, unsecured, senior debt and other financial obligations, whether outstanding on the date of the indenture or incurred following the date of the indenture. Subject to limited restrictions contained in the indenture discussed below, there is no limit under the indenture on the amount of additional debt we may incur. See " – Subordination" below.

The notes are not secured by any collateral or lien and we are not required to establish or maintain a sinking fund to provide for payments on the notes. See " – No Collateral Security; No Sinking Fund" below. In addition, the notes are not bank certificates of deposit and are not insured by the Federal Deposit Insurance Corporation, the Securities Investor Protection Corporation or any other agency or company.

You may select the amount (subject to a minimum principal amount of $1,000) and term (ranging from 3 months to 10 years) of the notes you would like to purchase when you subscribe; however, depending upon our capital requirements, we may not always offer notes with the requested terms. See " – Denomination" and " – Term" below.

We will determine the rate at which we will pay you interest on the notes at the time of subscription and the rate will be fixed for the term of your note. Currently available rates will be set forth in interest rate supplements to this prospectus. The interest rate will vary based on the term to maturity of the note you purchase and the total principal amount of all notes owned by you and your immediate family. We may change the interest rates at which we are offering new or renewed notes based on market conditions, the demand for notes and other factors. See " – Interest Rate" below.

Upon acceptance of your subscription to purchase notes, we will create an account in a book-entry registration and transfer system for you, and credit the principal amount of your subscription to your account. We will send you a purchase confirmation that will indicate our acceptance of your subscription. You will have five business days from the postmark date of your purchase confirmation to rescind your subscription. If your subscription is rejected, or if you rescind your subscription during the rescission period, all funds deposited will be promptly returned to you without any interest. See " – Book-Entry Registration and Transfer" and " – Rescission Right" below. Investors whose subscriptions for notes have been accepted and anyone who subsequently acquires notes in a qualified transfer are referred to as "holders" or "registered holders" in this prospectus and in the indenture.

We may modify or supplement the terms of the notes described in this prospectus from time to time in a supplement to the indenture and a supplement to this prospectus. Except as set forth under " – Amendment, Supplement And Waiver" below, any modification or amendment will not affect notes outstanding at the time of such modification or amendment.

**Denomination.** You may purchase notes in the minimum principal amount of $1,000 or any amount in excess of $1,000. You will determine the original principal amount of each note you purchase when you subscribe. You may not cumulate purchases of multiple notes with principal amounts less than $1,000 to satisfy the minimum denomination requirement.


EXHIBIT
#4
Pg # of 5

## LEGAL MATTERS

Certain legal matters in connection with the notes have been passed upon for us by our Chief Legal Officer, Michael Lavin, Irvine, California and by Alston & Bird LLP, Dallas Texas.

## EXPERTS

The consolidated financial statements incorporated in this Prospectus by reference to the Annual Report on Form 10-K for the year ended December 31, 2023 have been so incorporated in reliance on the report of Crowe LLP, independent registered public accounting firm, given on the authority of said firm as experts in auditing and accounting.

## GLOSSARY

**asset-backed securities** — Securities that are backed by financial assets, such as automobile contracts and loans.

**automobile contract** — A retail installment sales contract or installment loan agreement secured by a new or used automobile, light-duty truck or van.

**credit enhancement** — Credit enhancement refers to a mechanism that is intended to protect the holders of the asset-backed securities against losses due to defaults by the obligors under the automobile contracts.

**excess spread cash flows** — The difference between the cash collected from automobile contracts in a securitization or warehouse credit facility in any period and the sum of (i) the interest and principal paid to investors on the indebtedness issued in connection with the securitization or warehouse credit facility, (ii) the costs of servicing the automobile contracts and (iii) certain other costs incurred in connection with completing and maintaining the securitization or warehousing.

**overcollateralization** — With respect to a securitization or warehouse credit facility, the excess of (a) the aggregate principal balance of the securitized or warehoused pool of automobile contracts over (b) the aggregate outstanding principal amount of the related indebtedness.

**securitization or securitized** — The process through which automobile contracts and other receivables are accumulated or pooled and sold to a trust which issues securities representing interests in the trust to investors.

**servicing portfolio** — All of the automobile contracts that we own and that we have sold in securitizations and into our warehouse credit facilities and, in each case, continue to service.

**special purpose entities** — Our subsidiaries that were formed for the specific purpose of securitizing our automobile contract receivables and facilitating our warehouse, residual and other financing facilities.

**spread account** — An account required by the credit enhancer of a securitization or warehouse credit facility in order to protect the credit enhancer against credit losses. Generally, excess spread cash flow from the pool of automobile contracts is credited to the account and retained until the account balance reaches a set maximum balance. If the maximum balance set forth under the terms of a particular securitization or warehouse credit facility is attained, the excess spread cash flows and any surplus in the spread account are returned to us, our residual lenders or the purchaser of a residual interest, as the case may be. The maximum balance in a particular securitization may increase or decrease over time, and also may never be attained in any particular securitization or warehouse credit facility. Any remaining spread account balance is released to us, our residual lenders or the purchaser of a residual interest, as the case may be, upon termination of the securitization or warehouse credit facility.

**warehousing** — A method in which automobile contracts are financed by financial institutions on a short-term basis. In a warehousing arrangement, which we also refer to as a "warehouse credit facility", automobile contracts are accumulated or pooled on a daily or less frequent basis and assigned or pledged as collateral for short-term borrowings until they are financed in a securitization.



EXHIBIT
#4
pg 5 of 5



**CPS**
Consumer Portfolio Services, Inc.
P.O. Box 57071 Irvine, CA 92619

**SERVICING CENTER**
Consumer Portfolio Services, Inc.  P.O. BOX 57071
Irvine, CA 92619

Notice delivered or mailed on October 21, 2024

JAMIE JOHN-CRANE

1. We were recently asked to consider your credit application for credit in connection with your purchase of an automobile. As required by Regulation B (Federal Equal Opportunity Act) and certain state laws, this letter is to advise you that we have declined to finance your automobile purchase. We are unable to offer you credit on the terms that you requested for the following reasons:

**A. CREDIT**
☐ No credit file
☐ Insufficient number of credit references provided
☐ Unacceptable type of credit references provided
☐ Unable to verify credit references
☐ Foreclosure, repossession, collection action, or judgment
☐ Tax or other lien
☐ Excessive obligation in relationship to income
☐ Delinquent past or present credit obligations
☐ Bankruptcies
☐ Unable to verify residential obligation
☐ Limited credit experience

**B. EMPLOYMENT STATUS**
☐ Unable to verify employment
☐ Length of employment
☐ Temporary or irregular employment

**C. INCOME**
☐ Insufficient income for type of credit requested
☐ Unable to verify income

**D. RESIDENCY**
☐ Temporary or too short a period of residence
☐ No home telephone
☐ Unable to verify residence
☐ Unable to verify home phone

**E. OTHER**
☐ Credit application/document incomplete
☐ Value or type of collateral insufficient
☒ We do not grant credit to any applicant on the terms and conditions requested
☐ Inadequate down payment
☐ We do not currently finance at this dealership
☐ Other (specify)

2. **DISCLOSURE OF USE OF INFORMATION OBTAINED FROM OUTSIDE SOURCE**
☐ Disclosure inapplicable
☒ In compliance with the Fair Credit Reporting Act, our credit decision was based in whole or in part on information obtained in a report from the following consumer reporting agency:

TransUnion – Consumer Relations
2 Baldwin Place
P.O.Box 1000
Chester PA 19022
1-800-888-4213

Experian
701 Experian Parkway
PO Box 2002
Allen TX 75013
(888) 397-3742

You have the right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we denied credit to you. You also have a right to a free copy of your credit report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

☒ We also obtained your credit score from a consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change, depending on how the information in your consumer report changes.

Your credit score is:

Date: 09/27/24

Scores range from a low of 300 to a high of 850.

**EXHIBIT**
**# 5**
**Pg 1 of 3**

Key factors that adversely affected your credit score:



If you have any questions regarding your credit score, you should contact TransUnion - Consumer Relations at Address: 2 Baldwin Place, P.O.Box 1000, Chester PA 19022 Telephone number: 1-800-888-4213

☐ Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a consumer reporting agency. Under the Fair Credit Reporting Act, you have the right to make a written request, no later than 60 days after you receive this notice, for disclosure of the nature of this information. Please mail the request to the address printed below.

3. NOTICE
The Federal Equal Credit Opportunity Act and/or comparable provisions of certain state laws prohibit creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income is derived from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue NW, Washington, DC 20580.

4. If you have any questions regarding this notice, you should contact: **CPS Customer Care**
**Consumer Portfolio Services, Inc.**
**P.O. Box 57071**
**Irvine, CA 92619**
**(800) 486-9495**

EXHIBIT
#5
Pg 2 of 3

**TD1**

# Inquiries

[redacted]

[redacted]

**CPS**

Inquired on Sep 27, 2024

Business Type: Finance, personal

19500 JAMBOREE ROA

IRVINE, CA 92612

(888) 469-4520

This inquiry is scheduled to continue on record until Oct 2026

[redacted]

[redacted]

[redacted]

**GLADSTONE SU**

Inquired on Sep 27, 2024

Business Type: Automotive

18500 SE MCLOUGHLI

MILWAUKIE, OR 97268

(503) 513-6600

This inquiry is scheduled to continue on record until Oct 2026

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

EXHIBIT #5 pg 3 of 3

Gladstone Mitsubishi
18500 Se Mcloughlin Blvd
Milwaukie, OR 97267

(503) 513-6600

Date: 10/29/2024

274425 0 1101 537 1077 1/1 BIN:0
JAIME JOHN CRANE



Dear Applicant,

Thank you for applying to us for vehicle financing. After carefully reviewing your application, we are sorry to advise you that we cannot provide credit to you at this time or that we cannot provide credit on the terms you requested. You should understand that as a dealer, we generally sell or lease vehicles on credit only if a third party like a bank or finance company will agree to buy the contract from us on terms that are financially acceptable to us. Regrettably, we could not do that in this instance. If you would like a statement of specific reasons why your application was denied, please contact our Finance Director at the number or address shown above within 60 days of the date of this letter. We will provide you with the statement of the reasons within 30 days after receiving your request. If we provide the reasons to you orally, you have the right to request us to confirm them in writing within 30 days of our receiving your written request to do so. You should also receive letters from the financing sources to which we submitted your credit application giving their reasons for not providing credit to you or not providing credit on the terms you requested.

If we obtained information from a consumer reporting agency as part of our consideration of your application, it is checked and its name, address, and toll-free telephone number is shown below. The reporting agency played no part in our decision and is unable to supply specific reasons why we denied credit to you. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. You have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

You can find out about the information contained in your credit report (if one was used) by contacting each consumer reporting agency that is checked below.

☑ Experian
P. O. BOX 2002
Allen, TX 75013
(888) 397-3742
www.experian.com

☑ Equifax
P.O. BOX 740241
Atlanta, GA 30374
(800) 685-1111
www.equifax.com

☑ TransUnion
P.O. BOX 1000
Chester, PA 19022
(800) 888-4213
www.transunion.com



EXHIBIT
#6
Pg 1 of 2

☑ If this box is checked, we also obtained your credit score from the TransUnion consumer reporting agency and used it in making our credit decision. Your score is a number that reflects the information in your report. Your credit score can change, depending on how the information in your credit report changes.



Key factors that adversely affect your credit score:

If you have any questions regarding this notice you should contact:

Dealer name:     Gladstone Mitsubishi
Dealer address:  18500 Se Mcloughlin Blvd
                 Milwaukie, OR 97267
Dealer's telephone number: (503) 513-6600

If you have any questions regarding this notice, you can contact us at the phone number or address shown above.

Sincerely,

Gladstone Mitsubishi

Notice: The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

EXHIBIT
#6
Pg 2 of 2



**FEDERAL TRADE COMMISSION**
PROTECTING AMERICA'S CONSUMERS

For Release

# Auto Lender Will Pay $5.5 Million to Settle FTC Charges It Harassed Consumers, Collected Amounts They Did Not Owe

May 29, 2014

Tags: Consumer Protection    Bureau of Consumer Protection    Fair Credit Reporting Act (FCRA)
Automobiles    Credit and Finance    Debt Collection

A national subprime auto lender will pay more than $5.5 million to settle Federal Trade Commission charges that the company used illegal tactics to service and collect consumers' loans, including collecting money consumers did not owe, harassing consumers and third parties, and disclosing debts to friends, family, and employers.

Consumer Portfolio Services, Inc. (CPS), headquartered in Irvine, Calif., agreed to refund or adjust 128,000 consumers' accounts more than $3.5 million and forebear collections on an additional 35,000 accounts to settle charges the company violated the FTC Act. CPS will pay another $2 million in civil penalties to settle FTC charges that the company violated the Fair Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA)'s Furnisher Rule.

"At the FTC, we hold loan servicers responsible for knowing their legal obligations and abiding by them," said Jessica Rich, director, FTC's Bureau of Consumer Protection. "The law is very clear: Loan servicers can't charge consumers more than they owe. And they can't threaten and harass consumers about delinquent debts."

The order settling the charges requires CPS to change its business    practices to comply with the requirements of the appropriate laws. In addition, the company is required to establish a[...] comprehensive data integrity program to ensure the accuracy, integrity and completene[...]

EXHIBIT
#7
Pg 1 of 3

servicing processes, and the data and other information it services, collects or sells. CPS must also provide the FTC with periodic independent assessments of its data integrity program for 10 years.

According to the FTC's complaint, CPS' loan-servicing violations    include:

- Misrepresenting fees consumers owed in collection calls, monthly statements, pay-off notices, and bankruptcy filings;

- Making unsubstantiated claims about the amounts consumers owed;

- Improperly assessing and collecting fees or other amounts;

- Unilaterally modifying contracts by, for example, increasing principal balances;

- Failing to disclose financial effects of loan extensions;

- Misrepresenting that consumers must use particular payment methods requiring service fees; and

- Misrepresenting that the company audits verified consumer accounts balances.

The company's collection violations include disclosing the existence of debts to third parties; calling consumers at work when not permitted or inconvenient; calling third parties repeatedly with intent to harass; making unauthorized debits from consumer bank accounts; falsely threatening car repossession; and deceptively manipulating Caller ID. Because for many of its accounts CPS is a creditor, the complaint charges these practices violated Section 5 of the FTC Act. For those accounts where CPS is a debt collector, the complaint charges these practices violated the FDCPA.

CPS is also charged with failure to establish and implement reasonable written procedures and failure to reasonably investigate and respond timely to consumer disputes under the Furnisher Rule.

Under the order, the company will begin sending refunds to consumers and adjusting affected account balances within 90 days. Consumers with questions about their eligibility for a refund or account adjustment should contact CPS directly via telephone at 1-888-806-2367, email FTCsettlement@consumerportfolio.com, or visit the company's website.

The FTC provides information for businesses regarding debt collection and the Furnisher Rule. For consumers, the FTC has resources on credit and loans and dealing with debt.

**EXHIBIT**
**#7**
**pg 2 of 3**

1/7/25, 10:07 AM
Case 6:25-cv-00213-MTK    Document 1    Filed 02/07/25    Page 32 of 43
Auto Lender Will Pay $5.5 Million to Settle FTC Charges it Harassed Consumers, Collected Amounts They Did... | Federal Trade Commi...

The Commission vote to authorize the staff to refer the complaint to the Department of Justice, and to approve the proposed consent decree, was 4-0-1, with Commissioner Terrell McSweeny not participating. The DOJ filed the complaint and proposed consent decree on behalf of the Commission in the Central District of California on May 28, 2014. The proposed consent decree is subject to court approval.

NOTE: The Commission authorizes the filing of a complaint when it has "reason to believe" that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest. Consent decrees have the force of law when signed by the District Court judge.

The Federal Trade Commission works for consumers to prevent fraudulent, deceptive, and unfair business practices and to provide information to help spot, stop, and avoid them. To file a complaint in English or Spanish, visit the FTC's online Complaint Assistant or call 1-877-FTC-HELP (1-877-382-4357). The FTC enters complaints into Consumer Sentinel, a secure, online database available to more than 2,000 civil and criminal law enforcement agencies in the U.S. and abroad. The FTC's website provides free information on a variety of consumer topics. Like the FTC on Facebook, follow us on Twitter, and subscribe to press releases for the latest FTC news and resources.

# Contact Information

**Media Contact**
Cheryl Warner
*Office of Public Affairs*
(202) 326-2480

**Staff Contact**
Tracy Thorleifson
*Northwest Regional Office*
(206) 220-4481

EXHIBIT
#7
Pg 1 of 3

 

U240083201218



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: U240083201218 |
| Date Filed: 10/25/2024 |

B3146-0217 10/25/2024 10:30 AM Received by California Secretary of State

**Submitter Information:**

Contact Name
Organization Name
Phone Number
Email Address
Address                                            None

**Debtor Information:**

| Debtor Name | Mailing Address |
| --- | --- |
| Jamie John-Crane | 1292 High Street #1161<br>Eugene, OR 97401 |

**Secured Party Information:**

| Secured Party Name | Mailing Address |
| --- | --- |
| CONSUMER PORTFOLIO SERVICES, INC. | PO BOX 57071<br>IRVINE, CA 92619 |

**Indicate how documentation of Collateral is provided:**
Entered as Text

**Description:**

This UCC-1 Financing Statement secures a promissory note and/or mortgage for the benefit of Jamie John-Crane as Grantor and Registered Owner. The promissory note and/or mortgage has been redeemed in lawful money pursuant to 12 U.S.C. § 411. The endorsement on the promissory note reads: "Pay to the Order of Jamie John-Crane, Redeemed in Lawful Money pursuant to 12 U.S.C. § 411. Grantor/Registered Owner."

This financing statement secures the property associated with the obligation, including any real estate, tangible or intangible property, deeds of trust, and all proceeds, products, or rents derived therefrom. Jamie John-Crane asserts a first priority lien against the collateral as the Grantor and Registered Owner, and CONSUMER PORTFOLIO SERVICES, INC., if listed as Trustee, is responsible for administrating the obligation.

Jamie John-Crane, as the Grantor and Registered Owner, holds equitable title to the collateral and asserts ownership over the promissory note, while CONSUMER PORTFOLIO SERVICES, INC. continues as the Trustee responsible for administrating the obligation.

This UCC-1 filing corrects the original terms of the promissory note executed on 10/4/2024 between Jamie John-Crane and CONSUMER PORTFOLIO SERVICES, INC (No. 0024281883). clarifying that the obligation has been redeemed in lawful money, and the Grantor is the rightful owner of the promissory note or mortgage. Jamie John-Crane asserts an interest in all present and future proceeds derived from the collateral, including any rents, royalties, or payments related to this property.

This filing confirms that all payments and obligations under the promissory note or mortgage must be settled in lawful money, and that Jamie John-Crane retains equitable ownership of the collateral.

**Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:**
Not Applicable

**Select an alternate Financing Statement type:**
Not Applicable

**Select an additional alternate Financing Statement type:**
Not Applicable

**Select an alternative Debtor/Secured Party designation for this Financing Statement:**
Not Applicable

EXHIBIT
#8
Pg1of2

Optional Filer Reference Information:
By: Jamie John-Crane (Debtor), Grantor/Registered Owner

☐ This Financing Statement is to be filed in the real estate records (if applicable).

This Financing Statement:

☐ Covers timber to be cut

☐ Covers as-extracted Collateral

☐ Is filed as a fixture filing

Name and address of a Record Owner of real estate described above (if Debtor does not have a record interest):

Description of real estate:

Miscellaneous Information:

Search to Reflect:

☐ Order a Search to Reflect

B3146-0218 10/25/2024 10:30 AM Received by California Secretary of State

EXHIBIT
#8
pg 2 of 2



See Proof on Next
Page

## AFFIDAVIT OF PUBLICATION

**Tulsa World**
**315 S. Boulder Ave. , Tulsa, OK 74103**
**(918) 582-0921**

I, Rachel Cozart, of lawful age, being duly sworn upon oath depose and say that I am an agent of Column Software, PBC, duly appointed and authorized agent of the Publisher of Tulsa World, a publication that is a "legal newspaper" as that phrase is defined for the city of Tulsa, for the County of Tulsa, in the state of Oklahoma, that this affidavit is Page 1 of 2 with the full text of the sworn-to notice set forth on the pages that follow, and that the attachment hereto contains the correct copy of what was published in said legal newspaper in consecutive issues on the following dates:

**Publication Dates:**
• Nov 27, 2024

**Notice ID:** pFO6yx23VDzWZk2XTmli

**Notice Name:** NOVEMBER TRUSTEE MEETING MINUTES

**Publication Fee:** $35.98

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true and correct.

*Rachel Cozart*
_____
Agent

**VERIFICATION**

State of New Jersey
County of Burlington

```
LIZA ORTIZ
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires November 27, 2028
```

Signed or attested before me on this: 11/27/2024

_____
Notary Public

Notarized remotely online using communication technology via Proof.

NOVEMBER TRUSTEE MEETING MINUTE

EXHIBIT
#9
P9 1 of 2

Published in the Tulsa World, Tulsa, Tulsa County, Oklahoma, November 27, 2024

NOVEMBER TRUSTEE MEETING MINUTES:During the November Trustee meeting, it was noted that multiple notices have been sent to Consumer Portfolio Services (CPS) via certified mail (with return receipt), requesting answers and supporting documentation related to matters of fiduciary responsibility and compliance. CPS has not directly addressed the issues raised, and their responses have been characterized as ambiguous or non-committal. A third certified letter was sent on **November 23, 2024**, officially notifying CPS of the following:1. The declarant affirms their full rights, titles, and interests in the matter at hand. No consent has been or will be given to any liens under UCC Article 9, **2.** Any implied or explicit belief that CPS holds a Power of Attorney (POA) for the declarant is hereby revoked, effective retroactively to **September 27, 2024**. 3.Charles E. Bradley Jr., CEO of CPS, is hereby notified of his fiduciary responsibilities to ensure all records are corrected appropriately, you have 30 days from this notice to send a written correspondence rejecting this appointment.4. CPS is strongly encouraged to provide a formal response in affidavit form, addressing the points raised. Failure to respond within **30 days** will be taken as acquiescence.

NOVEMBER TRUSTEE MEETING MINUTE

EXHIBIT
#9
pg 2 of 2

## ☰ Column

See Proof on Next
Page

### AFFIDAVIT OF PUBLICATION

**Tulsa World**
**315 S. Boulder Ave. , Tulsa, OK 74103**
**(918) 582-0921**

I, Enrique Diaz, of lawful age, being duly sworn upon oath depose and say
that I am an agent of Column Software, PBC, duly appointed and authorized
agent of the Publisher of Tulsa World, a publication that is a "legal
newspaper" as that phrase is defined for the city of Tulsa, for the County of
Tulsa, in the state of Oklahoma, that this affidavit is Page 1 of 2 with the full
text of the sworn-to notice set forth on the pages that follow, and that the
attachment hereto contains the correct copy of what was published in said
legal newspaper in consecutive issues on the following dates:

**Publication Dates:**
• Dec 4, 2024

**Notice ID:** 9Li6km9O5e5TCItuUhlm

**Notice Name:** Gladiator Conveyance

**Publication Fee:** $31.67

I state under penalty of perjury under the laws of Oklahoma that the foregoing
is true and correct.

*Enrique Diaz*
Agent

**VERIFICATION**

State of Pennsylvania
County of Lancaster

| | |
|---|---|
| Commonwealth of Pennsylvania - Notary Seal |
| Nicole Burkholder, Notary Public |
| Lancaster County |
| My commission expires March 30. 2027 |
| Commission Number 1342120 |

Signed or attested before me on this: 12/05/2024

*Nicole Burkholder*
Notary Public

Notarized remotely online using communication technology via Proof.


EXHIBIT
#10
pg 1 of 2

Published in the Tulsa World, Tulsa, Tulsa County, Oklahoma, December 4, 2024

The Trustees if the Kids With Adult Money Irrevocable Trust acknowledged the acceptance of a conveyance of property into the Trust. It was resolved that the vehicle described as: 2023 Jeep Gladiator, VIN:1C6HJT-FG2PL52262); Previously owned by Jamie John-Crane, has been conveyed into the Kids With Adult Money Irrevocable Trust as Trust Property. This conveyance is made as part of the Trust corpus, and all legal and equitable interest in the vehicle have been transferred irrevocably to the Trust. **The vehicle is now under the exclusive ownership and management of the Trust's Trustee(s) for the benefit of the Trust's beneficiaries.** The Trustee acknowledges this transfer as a valid and complete, and the Trust is now the sole owner of the vehicle. This notice serves as a public declaration that the above-described vehicle is no longer the personal property of Jamie John-Crane and is now Trust property under the Kids With Adult Money Irrevocable Trust. **Any claims, liens, or encumbrances against this vehicle as personal property of Jamie John-Crane are invalid.**

Gladiator Conveyance

EXHIBIT
#10
pg 2 of 2

Whistleblower Complaint, RICO, Action Requested No. RICOGLAD2024                                    1

Jamie Christina John-Crane                                    Date: December 15, 2024
878 Aspen St
Springfield, OR 97477-3513



Internal Revenue Service
Whistleblower Office - ICE
1973 N Rulon White Blvd
M S 4110
Ogden, U T 84404
Certified Mail No 7021 2720 0002 5399 9734

7021 2720 0002 5399 9734

**Subject: Whistleblower Complaint and Supporting Evidence Regarding RICO Violations, Tax Evasion, and Unjust Enrichment**

To Whom It May Concern:

I am urgently requesting an investigation into unlawful debt collection practices, unlawful credit captures, unlawful monetization securitization, and potential violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act. These violations involve multiple parties, including Crainic Automotive Group, Consumer Portfolio Services, Inc., and PIMCO Investment Fund.

I am submitting this letter, alongside:

IRS Forms 3949-A (Information Referral),
211 (Application for Award for Original Information), and
Supporting documentation including all correspondence to, from Crainic Automotive Group, Consumer Portfolio Services, Inc.,

Formally report activities by Consumer Portfolio Services, Inc. (CPS), Crainic Automotive Group (Gladstone Mitsubishi and Gladstone Subaru), PIMCO Investment Fund, and others. These entities have engaged in fraudulent practices, including unauthorized credit captures, tax evasion, and violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act. Their actions have resulted in significant harm to myself and the federal government, depriving the Treasury of substantial tax revenue while unjustly profiting from the misuse of financial instruments.

**Summary of Allegations:**

**1. Consumer Portfolio Services, Inc. (CPS)**
- CPS explicitly states in its prospectus that it **does not lend money** but instead **purchases contracts** and securitizes them for its benefit. Despite this, CPS has attempted to collect from me under the guise of an alleged obligation, yet no funding, loan, or credit was ever extended by CPS.
- CPS has securitized the note tied to my vehicle without providing me any benefit from the resulting security, while unlawfully retaining interest payments that should rightfully belong to me.
- These securities are traded within funds, including PIMCO Investment Fund, generating income for CPS and its affiliates while bypassing the proper tax reporting of these transactions.
- CPS has not registered this security in my name, or in general with the Securities Exchange Commission
- CPS sent me correspondence indicating that they did not extend me credit, and that I was denied a extension of my credit, and had no ties to them relating to the 9/27/24 credit capture initiated from Gladstone Mitsubishi
- 1099B, 1099OID have been filed against CPS, and also a notice of correction-rescission to redeem in lawful money was sent to them, yet they continue to attempt to collect an alleged debt.
- The credit capture performed by CPS was not authorized, done without any verbal or written consent, and has been monetized.
- CPS has sought to collect a debt based on contracts that I allege were done under duress, and are fraudulent, originating from Crainic Automotive Group.

EXHIBIT
#11
Pg 1a4

- I have sent CPS multiple correspondences, filed a complaint with Oregon Division of Financial Regulation, and the CFPB, including affidavits, and detailed correspondence. I have requested proof of chain of title, proof of sale of this alleged debt, proof of ownership, and a full accounting. Despite this, they continue to be non-responsive to those letters, provided canned responses, or not respond to the issues brought within the letters, which demonstrates their willful participation in a fraudulent scheme.
- Despite providing clear evidence of the debt's invalidity, CPS persists in their collection efforts, violating federal protections against predatory lending and unfair collection practices.
- CPS has refused to provide proof of lawful consideration for the loan upon request. Without this proof, it is reasonable to conclude that the alleged loan was fabricated on their balance sheet, meaning no real funds were ever extended to me. As a result, CPS cannot demonstrate that they suffered any actual loss and therefore have no legal standing to pursue debt collection or seek a remedy through this process.
- By continuing to enforce an illegitimate obligation despite awareness of its fraudulent nature, CPS engaged in actions prohibited under RICO. This includes the unlawful attempt to seize property and collusion with other entities to profit from the fraudulent scheme.

## 2. Crainic Automotive Group (Gladstone Mitsubishi and Gladstone Subaru)

- Gladstone Mitsubishi and Gladstone Subaru have confirmed in writing that they did not sell the application or loan to CPS, nor did they extend funding, a loan, or credit to JAMIE JOHN-CRANE.
- Despite this, these entities facilitated the unauthorized capture of my credit information, enabling CPS to securitize the note for their financial gain.
- Crainic Automotive Group through it's corporate name, and subsidiaries did multiple unauthorized credit captures between September 27 and October 8, 2024.
- The credit captures that were performed have been monetized, were unauthorized, without my verbal or written consent and done without my knowledge. Upon inquiring with Crainic why they continued to pull do credit captures, they denied the allegations stating it was Trans Union's error, not theirs.
- Crainic Automotive Group also required multiple contracts to be signed, which was done under duress. The initial contract was signed Redeem In Lawful Money pursuant to 12 USC 411.
- A 1099A, B, OID was done against Crainic Automotive Group. I intend on doing additional 1099s against each credit capture as well.
- Crainic Automotive Group has been non responsive with regards to showing chain of title, sale agreement, or any documentation showing that they sold the installment contract to CPS.
- The institution has failed to adhere to proper procedures under the Fair Credit Reporting Act(FCRA), Truth In Lending (TILA), and a fraudulent misrepresentation of their financial dealings.

## 3. PIMCO Investment Fund

- PIMCO Investment Fund is directly benefiting from the securitized note and trading securities derived from it which is tied to the VIN number of my vehicle (1C6htfg2pl522621 and my name JAMIE JOHN-CRANE.
- I allege that PIMCO has knowingly participated in this scheme by trading unregistered securities and failing to ensure proper tax reporting for these transactions.
- I have received no financial gain from this transaction, and upon calling PIMCO to inquire about the pooled CUSIP, and my security within it, I was hung up on.
- I will be filing 1099s against PIMCO and my security within.

I believe the above entities are engaging in significant tax evasion, including:

**Failure to Report Taxable Income,  Failure to Pay Tax/Informational Return, Corruption, False/Altered Documents, Unjust Enrichment, Improper Use of Financial Instruments.**

CPS and PIMCO have failed to report income derived from the securitization and trading of the note tied to my vehicle. The interest payments and profits from these securities have not been properly disclosed or taxed, depriving the federal government of substantial revenue. These companies have not properly accounted for the financial instruments or the tax implications of their actions.

EXHIBIT
# 11
pg 2 of 4

Whistleblower Complaint, RICO, Action Requested No. RICOGLAD2024                    3

By securitizing the note without providing lawful consideration or benefit to me, CPS has enriched itself unjustly while avoiding its tax obligations.

**Specific Complaints:**

- Threats of replevin action: Consumer Portfolio Services, Inc. although not properly validating the debt, or showing that they are holder in due course of the financial instrument they are attempting to enforce, has threatened to damage and harm me personally, my reputation, and take and use for their benefit assets which have been conveyed and are held in an irrevocable Trust. Including the 2023 Jeep Gladiator, the signature, social security number, name, address, of JAMIE JOHN-CRANE without legal grounds, authority, or permission from the Trust to do so.
- Crainic Automotive Group, and their subsidiaries have damaged me financially, by not explaining to me that they were going to sell this as a financial asset, not providing me the credits I was entitled to, and then working with CPS to defraud and steal from me, as well as damaging my personal consumer credit report and my standing in the business community.
- Pimco Investment Funds is in cahoots with both Crainic Automotive Group, and CPS working along side them to financially damage me by withholding interest payments that are due to me, after they lied stating that none of them provided any financing, loans, contract sales etc.

## RICO VIOLATIONS:

The actions of these entities represent significant violations of federal tax law and the RICO Act. Their fraudulent practices and unjust enrichment must be addressed to protect consumers, like myself and ensure proper tax compliance. As a supporter of the United States Treasury and Internal Revenue Service, I believe in proper tax reporting and doing my taxes.

The actions of CPS, Crainic Automotive Group, and PIMCO constitute a pattern of racketeering activity under the RICO Act, including:

- Unauthorized Credit Captures: Using my credit information without permission for financial gain.
- Mail and Wire Fraud: Correspondence and electronic transactions used to enforce fraudulent claims and securitize the note.
- Unlawful Enrichment: Profiting from the securitization and trading of the note while avoiding rightful tax obligations.

Their coordinated activities demonstrate a clear enterprise benefiting from the unjust use of personal and trust property. CPS's actions constitute the collection of unlawful debt under 18 USC 1962(c). The Institution's persistent attempts to enforce a fraudulent contract through coercion and threats of harm to myself and Trust property reflects a pattern of racketeering activity, meeting the legal definition under the RICO Act.

CPS is not unfamiliar with previous claims brought against them for similar claims, and have been previously penalized by the CFPB, and through Federal Lawsuits against the corporation. However, they continue to operate in the same manner.

Their actions, in coordination with other entities such as Crainic Automotive Group, Trans Union, Experian, Equifax, PIMCO Investment Services, reveal a concerted effort to profit from illicit financial practices at the expense of the consumer.

Under the RICO Act, individuals or organizations found guilty of racketeering activities face severe penalties, including:

- A maximum of 20 years in prison for those involved;
- Fines up to $250,000 or double the amount of the proceeds derived from the criminal activity;
- Enhanced sentences in cases of severe or ongoing violations;


EXHIBIT
# 11
PG 3 of 4

Whistleblower Complaint, RICO, Action Requested No. RICOGL AD2024                    4

These penalties underscore the gravity of the aforementioned entities and highlight the urgent need for enforcement.

In this case, the companies listed are involved in the fraudulent collection of unlawful debts, wire fraud, mail fraud, securities fraud, theft and misappropriation constitute racketeering activity under RICO, while specifically includes fraud and the use of deceitful practices to affect interstate commerce. The repetitive and deliberate nature of these actions by multiple financial institutions involved in this pattern of behavior meets the legal definition of "racketeering activity" and satisfies the "pattern" required for a RICO violation.

**I respectfully request the IRS Whistleblower Office to:**

1. An immediate investigation into Consumer Portfolio Services, Crainic Automotive Group, and PIMCO Investment Fund, with particular focus on potential violations of federal law, including the RICO statute.
2. Conduct a Full Audit: Investigate CPS, Crainic Automotive Group, and PIMCO Investment Fund for tax evasion and related financial crimes.
3. Investigate CPS, Crainic Automotive Group and PIMCO Investments for potential fraudulent debt contracts.
4. Examine the roll of Charles L. Bradley JR, CEO of CPS, in facilitating these actions.
5. Review Securitization Practices: Evaluate whether the unregistered securities tied to the note comply with tax and securities regulations.
6. Enforce Penalties: Pursue all applicable penalties under federal law for tax evasion, fraud, and racketeering.
7. Assess these activities under the RICO statute, particularly regarding the collection of unlawful debts.

**Urgency of Request:**

The threats of a planned repossession from Consumer Portfolio Services, Inc to unlawfully seize Trust property, and continued damage to JAMIE JOHN-CRANE's personal consumer credit profile requires **immediate attention** to prevent further harm of not only myself, Jamie John-Crane, but also harm to the Trust.

I am available to provide any additional testimony, clarification and documentation I may receive after sending this notice to all parties. You can directly contact me at: 541-683-1390, my mailing address: 1292 High Street #1161, Eugene, OR 97401, or via email at jamiejohn87@email.com

Thank you for your time, and prompt attention to this matter, I look forward to your response and to any further steps we can take to bring justice to those impacted by these unlawful actions.

Sincerely,

Jamie John-Crane        UCC1-308
Jamie John-Crane
Trustee/Registered Owner Authorized Agent

This letter has been copied to the following agencies for additional investigation and enforcement:
- Consumer Financial Protection Bureau (CFPB)
- Securities and Exchange Commission (SEC)
- US Department of Justice, Office of The Attorney General 950 Pennsylvania Avenue NW, Washington DC 20530-0001; Certified Mail No 7021 2720 0002 5399 9871

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL

EXHIBIT
#11
PJ4084

7021 2720 0002 5399 9871

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **NOTICE OF REMOVAL** to be filed using the CM/ECF System, and sent the same by U.S. Mail to the following party:

Jamie John-Crane
1292 High St., #1161
Eugene, Oregon 97401


*/s/ Robert E. Sabido*

_____
Robert E. Sabido