Robert E. Sabido, OSB No. 964168
robert@sabidolawllc.com
SABIDO LAW, LLC
9385 SW Locust Street
Tigard, Oregon 97223
Telephone: (971) 302-6236

Ke Liu (Admitted *Pro Hac Vice*)
kliu@pilgrimchristakis.com
PILGRIM CHRISTAKIS LLP
One South Dearborn Street, Suite 1420
Chicago, Illinois 60603
Telephone: (312) 445-0488

Attorneys for Defendant/Counter-Plaintiff/Third-Party Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | | |
|---|---|---|
| JAMIE JOHN-CRANE, | ) | Case No: 6:25-cv-00213-MTK |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | **DEFENDANT CONSUMER** |
| | ) | **PORTFOLIO SERVICES, INC.'S** |
| v. | ) | **(1) ANSWER AND AFFIRMATIVE** |
| | ) | **DEFENSES TO PLAINTIFF'S** |
| CONSUMER PORTFOLIO SERVICES, INC., | ) | **COMPLAINT, AND (2)** |
| | ) | **COUNTERCLAIM AND THIRD-** |
| Defendant/Counter-Plaintiff. | ) | **PARTY COMPLAINT** |
| | ) | |
| | ) | |
| CONSUMER PORTFOLIO SERVICES, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMIE JOHN-CRANE, AS TRUSTEE FOR KIDS | ) | |
| WITH ADULT MONEY TRUST (1); JOHN- | ) | |
| CRANE PRIVATE BANK E&T; and OREGON | ) | |
| DEPARTMENT OF TRANSPORTATION, | ) | |
| DRIVER AND MOTOR VEHICLE SERVICES, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

Page 1 – DEFENDANT CONSUMER PORTFOLIO SERVICES, INC.'S (1) ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT, AND (2) COUNTERCLAIM
AND THIRD-PARTY COMPLAINT

<u>**ANSWER**</u>

Defendant Consumer Portfolio Services, Inc. ("CPS"), by counsel, states as its Answer to Plaintiff's Complaint, as follows:

## I. PARTIES

1.      Plaintiff is a resident of Lane County, Oregon, and the lawful owner of the motor vehicle described herein.

<u>**ANSWER**</u>:    CPS admits that Plaintiff alleges that she is a resident of Lane County, Oregon, that Plaintiff purchased a 2023 Jeep Gladiator with VIN 1C6HJTFG2PL522621 and financed that purchase by entering into a Retail Installment Contract which was assigned to CPS, and that Plaintiff is the owner of the vehicle subject to CPS's security interest and lien on the vehicle. CPS denies the remaining allegations of this paragraph.

2.      Defendant, Consumer Portfolio Services, Inc (hereafter CPS)., is a foreign business corporation registered with the Oregon Secretary of State, Registry Number 361566-85. CPS's principal place of business is located at 3800 Howard Hughes Parkway, Suite 1400, Las Vegas, NV 89169. CPS's mailing address is 19500 Jamboree Road, Irvine, CA 92612, and its Oregon Registered Agent is CT Corporation System, located at 780 Commercial St SE, Suite 100, Salem, OR 97301.

<u>**ANSWER**</u>:    CPS admits the allegations of this paragraph.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to ORS 28.010 et seq., as this action seeks declaratory judgment and equitable relief regarding Defendant's lien, fraudulent claims to the subject vehicle.

<u>**ANSWER**</u>:    CPS admits that this Court has subject matter jurisdiction. CPS denies the remaining allegations of this paragraph.

4.      Venue is proper in this Court pursuant to ORS 14.080(1), as the vehicle in question is located in Lane County, and Plaintiff resides in this County.

**ANSWER**:    CPS admits that, based on the allegations of the Complaint, venue is proper in this District. CPS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

### III. FACTUAL ALLEGATIONS

**A. Vehicle Description and Ownership**

5.    Plaintiff is the lawful owner of the following motor vehicle:

Year: 2023 Make: Jeep Model: Gladiator VIN: 1C6HJTFG2PL522621

**ANSWER**:    CPS admits that Plaintiff purchased a 2023 Jeep Gladiator with VIN 1C6HJTFG2PL522621 and financed that purchase by entering into a Retail Installment Contract which was assigned to CPS, and that Plaintiff is the owner of the vehicle subject to CPS's security interest and lien on the vehicle. CPS denies the remaining allegations of this paragraph.

6.    Plaintiff conducted a UCC-11 search with the Oregon Secretary of State, confirming that no UCC-1 Financing Statement has been filed by Defendant to perfect its lien, rendering the lien unperfected, invalid, and unenforceable. (**EXHIBIT 1**)

**ANSWER**:    CPS denies that it did not "perfect its lien" and that its lien is "unperfected, invalid, and unenforceable." CPS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

7.    On October 4, 2024, Plaintiff lawfully conveyed the vehicle into an irrevocable Trust, which now holds the current UCC-1 Financing Statement filed December 2, 2024 for the vehicle, the Fee Simple Absolute Title, Equitable Title, and the vehicle has been registered within the Trust. (**EXHIBIT 2**)

**ANSWER**:    CPS denies the allegations of this paragraph.

B.    On October 25, 2024, Plaintiff filed a UCC-1 Financing Statement with the California Secretary of State (Exhibit 8) asserting legal and equitable ownership over the note and the collateral associated with the vehicle. The UCC-1 designates Plaintiff as the Grantor and Registered Owner of the obligation, with equitable title to the collateral and proceeds derived therefrom. Defendant is listed as the Trustee responsible for administering the obligation. Despite

this designation, Defendant has failed to fulfill its fiduciary duties as Trustee, including validating the debt, providing accounting and providing chain of title, rendering its claims over the collateral invalid and unenforceable.

**ANSWER**:    CPS denies the allegations of this paragraph.

**C. CPS's Fraudulent Claims:**

8.    CPS falsely asserts a lien on the Oregon Certificate of Title, as reflected in the titled issued by the Oregon Department of Motor Vehicles, CPS however has failed to perfect its security interest under ORS Chapter 79 (UCC Article 9).

**ANSWER**:    CPS denies the allegations of this paragraph.

9.    CPS cannot demonstrate lawful ownership of the note associated with the retail installment contract because:

a.    The note has been pooled as an ·Asset Backed Security, and is being publicly traded within the CUSIP 722008307, ISIN US7220083072, PIMCO Investment Grade Credit Bond Fund, severing any enforceable interest under ORS 73.0301 (UCC Article 3). (**EXHIBIT 3**)

b.    There is no evidence to support that CPS can produce the original wet-ink signature Note, as required under ORS 73.0301, and instead CPS relies on a forged DocuSign electronic copy, that Plaintiff did not execute.

c.    CPS's own prospectus, filed with the U.S. Securities and Exchange Commission (SEC), confirms that CPS does not lend money but instead acquires consumer contracts for securitization.

d.    Plaintiff retains a color photocopy of the original wet-ink Note, which was certified and witnessed by Plaintiff's notary at the time of signing. There is no evidence to support that CPS possess the original wet-ink Note and cannot demonstrate any right to enforce the document.

e.    CPS's SEC Prospectus explicitly states: "*The notes are not secured by any collateral or lien.*" This statement directly contradicts CPS's assertion of a lien on Plaintiffs vehicle and demonstrated that the notes CPS securitizes are unsecured financial instruments. (**EXHIBIT 4**)

f.    CPS's SEC Prospectus further confirms: *"We are not required to establish or maintain a sinking fund to provide for payments on the notes."* This highlights CPS's speculative business practices and severs any connection between Plaintiff's vehicle and the securitized note.

**ANSWER**:     CPS denies the allegations of this paragraph.

10.     Both CPS and the Dealership where the vehicle was acquired (Gladstone Mitsubishi) have both admitted in writing that they did not provide Plaintiff with any financing or loan regarding the 9/27/24 credit inquiry. Specifically:

a.     CPS Sent a letter "Notice delivered or mailed on October 21, 2021" corelating to the 9/27/24 credit application submitted by Gladstone Mitsubishi confirming "*this letter is to advise you that we have <u>declined to finance your automobile</u> purchase. We are <u>unable to offer you credit</u> on the terms that you requested ...*" (**EXHIBIT 5**)

b.     Gladstone Mitsubishi, sent a letter dated 10/29/24 confirming that they "*cannot provide credit to you at this time or that we cannot provide credit on the terms you requested You should understand that as a dealer, <u>generally sell or lease vehicles on credit only i(a third-party bank or finance company will agree to buy the contract from us on terms that are financially acceptable to us. Regrettably, we could not do that in this instance</u>.*" (EXHIBIT 6)

**ANSWER**:     CPS denies the allegations of this paragraph to the extent they pertain to CPS. CPS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

11.     CPS has monetized the Note bearing Plaintiff's name through securitization, pooling, and sale to investors, generating substantial financial benefits including dividends, interest payments, and proceeds from asset- backed securities (ABS). Plaintiff, as the lawful creator and Registered Owner of the Note, retains all rights to these proceeds under equitable principals of restitution and unjust enrichment.

**ANSWER**:     CPS denies the allegations of this paragraph.

12.     These admissions establish that CPS provided no consideration and cannot demonstrate a valid claim of title, both of which are required to enforce a note or lien.

**ANSWER**:     CPS denies the allegations of this paragraph.

13.     CPS's actions are fraudulent, deceptive, and constitute bad faith attempts to assert unlawful claims over Plaintiffs property.

**ANSWER**:     CPS denies the allegations of this paragraph.

14.     Under ORS 73.0301 (UCC Article 3) and the best evidence rule (ORS 40.550), CPS must produce the original wet-ink Note to assert any rights under the alleged debt instrument. Copies are inadmissible unless authenticated by comparison to the original.

**ANSWER**:     CPS denies the allegations of this paragraph.

**15.     Plaintiff demands suppression of any electronic or photocopied versions of the Note presented by CPS unless the original wet-ink signature Note is produced for inspection and verified against Plaintiffs certified copy.**

**ANSWER**:     CPS denies the allegations of this paragraph.

**D.     CPS's History of Misconduct:**

16.     CPS has well-documented history of engaging in deceptive practices and violations of consumer protection laws:

    a.     FTC Enforcement Action (2014): CPS was fined over $5.5 million by the Federal Trade Commission for unlawful auto loan servicing, deceptive debt collection practices, and violations of the Fair Credit Reporting Act. The FTC found that CPS harassed consumers, misrepresented fees; and reported inaccurate credit information. (**EXHIBIT 7**)

    b.     Hollman v. CPS (2022): In this case, CPS was accused of violating consumer protection laws, including the Maryland Consumer Debt Collection Act, for unlawfully repossession practices and deceptive debt collection.

    c.     Shareef v. CPS (2020): CPS was accused of violating the Truth in Lending Act, Fair Debt Collection Practices Act, and Fair Credit Reporting Act through deceptive practices and unlawful credit reporting.

**ANSWER**:     CPS denies the allegations of this paragraph.

17.     These prior cases and regulatory actions demonstrate a pattern of fraudulent conduct by CPS, which is directly relevant to its actions in the present case.

**ANSWER**:     CPS denies the allegations of this paragraph.

**E.     Administrative Process and CPS's Acquiescence:**

18.     Plaintiff initiated a lawful administrative process to resolve this dispute, including:

a.  Notice of Correction/Rescission and Request for Verification, sent Certified Mail No. 7022333000164453278.

b.  Filing a UCC1 Financing Statement on the Corrected Note redeeming in Lawful Money Pursuant to 12 USC 411. (EXHIBIT 8)

c.  Formal Notice of Dispute and Prohibition Against Unauthorized Reporting, sent Certified Mail No. 70212720000253999710 via Notary Presentment

d.  CFPB Complaint, No. 241113-16947759 sent to CPS.

e.  Request for Documentation, Certified Mail No. 70212720000253999765

f.  CFPB Complaint, No. 241103-16788924 sent to CPS

g.  Affidavit of Fact, request for rebuttal, Certified Mail No. 70212720000253999796 via Notary presentment.

h.  Public Notice of Fiduciary Appointment (**EXHIBIT 9**)

i.  Public Notice of Vehicle Conveyance into Trust (**EXHIBIT 10**)

j.  Certificate of Protest, Fiduciary Appointment and Authorization, Estoppel by Acquiescence Notice Letter, Sent via Notary Presentment Registered Mail No. RF321318490US.

k.  Whistleblower Complaint and Supporting Evidence Regarding RICO Violations, Tax Evasion and Unjust Enrichment, to IRS Whistleblower Office, Attorney General, CPS. (**EXHIBIT 11**)

**ANSWER**:  CPS lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of this paragraph and, on that basis, denies them.


19.  Plaintiff issued a final Notice of Estoppel via notary presentment to Defendant's CEO, via registered mail (No. RF321318490US), demanding resolution of the matter which has gone unanswered.

**ANSWER**:  CPS lacks knowledge or information sufficient to form a belief as to the truth of

the allegations of this paragraph and, on that basis, denies them.


20.  Public Notice: Plaintiff published a public notice in Tulsa World Newspaper on November 27, 2024, appointing Defendant's CEO as fiduciary to zero the account and return all proceeds. Defendant failed to contest or rebut this notice, thereby acquiescing to its terms under ORS 73.0505 and UCC Article 3.

**ANSWER**:     CPS denies that its CEO is "appoint[ed]" as "fiduciary to zero the account and return all proceeds" and that it "acquiesce[ed] to its terms under ORS 73.0505 and UCC Article 3." CPS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, on that basis, denies them.

21.     Public Notice: Plaintiff published a public notice in Tulsa World Newspaper on December 4, 2024, conveying the vehicle into Trust, identifying it as Trust Property and under protection of the Trust.

**ANSWER**:     CPS lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, on that basis, denies them.

22.     Under ORS 73.050 and UCC Article 3, Defendant's failure to respond to Plaintiff's notarized demands, public notices, and fiduciary appointments constitutes tactic agreement to Plaintiff's claims and estops Defendant from asserting contradictory positions. Defendant has had multiple opportunities to rebut Plaintiff's claims and has failed to do so, further validating Plaintiffs position.

**ANSWER**:     CPS denies the allegations of this paragraph.

**F.     CPS's Credit Reporting Misconduct:**

23.     CPS has reported inaccurate and derogatory information regarding Plaintiff to consumer credit reporting agencies, causing harm to Plaintiffs credit reputation and standing in the business community.

**ANSWER**:     CPS denies the allegations of this paragraph.

24.     Specifically, CPS has falsely reported that Plaintiff owes a debt related to their account, despite:

a.     CPS Providing no financial or consideration, as confirmed in their own correspondence, and Perspectus filed with the SEC.

b.     CPS's failure to establish a valid chain of title or demonstrate any enforceable rights.

c.     CPS's false reporting has caused Plaintiff to suffer financial harm, including denial of credit applications, increased interest rates, and reputational damage.

Plaintiff seeks correction of all derogatory tradelines and removal of any inaccurate reporting to restore Plaintiff's financial standing.

**ANSWER**:    CPS denies the allegations of this paragraph.

25.    CPS's false reporting constitutes a violation of:

a.    ORS 646.608(1): Unlawful Tracie Practices Act, prohibiting the dissemination of false information to harm a consumer.

b.    15 USC 1681s-2: Fair Credit Reporting Act (FCRA), which requires furnishers of credit information to report only accurate and complete information.

**ANSWER**:    CPS denies the allegations of this paragraph.

26.    CPS's actions have caused Plaintiff has suffered and caused substantial financial harm including:

a.    Damage to creditworthiness, impacting Plaintiffs ability to secure financing or favorable terms.

b.    Emotional distress, humiliation, and reputational harm caused by CPS's derogatory credit remarks.

**ANSWER**:    CPS denies the allegations of this paragraph.

## IV. LEGAL CLAIMS

**COUNT I: Declaratory Judgement:**

27.    Plaintiff seeks a declaratory judgment under ORS 28.010 that:

a.    Defendant's lien is invalid and unenforceable.

b.    Defendant has no standing to enforce any claims under the Note.

c.    Plaintiff is entitled to clear title to the vehicle, free of Defendant's claims.

**ANSWER**:    CPS denies the allegations of this paragraph.

28.    Plaintiff further asserts that the UCC-1 Financing Statement Filed on October 25, 2024 establishes Plaintiff as the lawful owner and holder of the Note and collateral. CPS has failed to fulfill its fiduciary obligations, rendering its lien and claims over the collateral invalid.

**ANSWER**:    CPS denies the allegations of this paragraph.

**COUNT II: Equitable Relief - Demand for Accounting:**

29.    Require Defendant to provide full accounting of all transactions involving the Note bearing Plaintiff's name, including but not limited to:

    a.    The securitization of the Note.

    b.    Proceeds form any pooled CUSI P linked to the Note bearing Pia inti ffs name.

    c.    Interest, dividends, and principal payments collected or paid to CPS linked to the Note bearing Plaintiffs name.

    d.    Pooling and Serving Agreement (PSA) or equivalent documentation, including all assignments or transfers of the Note bearing Plaintiffs name.

    e.    Dividends.

    f.    Interest Payments.

    g.    Principal Payments.

    h.    The current Minor CUSIP associated with the Note bearing Plaintiff's name.

**ANSWER**:    CPS denies the allegations of this paragraph.

**COUNT III: Restitution and Credit Reporting Corrections:**

30.    Plaintiff is entitled to restitution of all interest payments, proceeds, dividends, and other gains derives from the note and collateral realized by Defendant or its assigns, as confirmed by the UCC-1 Financing Statement filed on October 25, 2024. The UCC-1 affirms Plaintiff's equitable ownership of all current and future payments derived from the note. Defendants failure to remit these proceeds constitutes unjust enrichment and violation of Plaintiffs equitable rights.

**ANSWER**:    CPS denies the allegations of this paragraph.

31.    Plaintiff demands that CPS relinquish possession, claims and ownership of the Minor CUSIP associated with the Note bearing Plaintiff's name into Plaintiff's brokerage account, under Plaintiffs exclusive control, within 30 days of judgment.

**ANSWER**:    CPS denies the allegations of this paragraph.

32.    Plaintiff demands that CPS:

    a.    Immediately update Plaintiff's credit report to reflect "Paid ln Full".

     b.      Immediately remove all derogatory or negative remarks associated with the alleged account.

     c.      Immediately cease all future credit reporting activity related to the alleged account.

**ANSWER**:    CPS denies the allegations of this paragraph.

WHEREFORE, Consumer Portfolio Services, Inc. respectfully requests that the Court dismiss Plaintiff Jamie John-Crane's Complaint with prejudice or, alternatively, enter judgment in CPS's favor and against Plaintiff, award CPS its costs of suit and attorneys' fees, and award CPS any other further relief the Court deems just and equitable.

## AFFIRMATIVE DEFENSES

Defendant Consumer Portfolio Services, Inc. ("CPS"), by counsel, states as its Affirmative Defenses to Plaintiff's Complaint, as follows:

1.      In the event CPS is deemed liable, which CPS expressly denies, then CPS is entitled under the doctrine of setoff and/or recoupment to offset any and all amounts that Plaintiff may owe to CPS against any judgment that may be entered against CPS.

2.      To the extent Plaintiff suffered any actual damages, which CPS denies, then Plaintiff's claims are subject to the defense of failure to mitigate.

3.      To the extent Plaintiff suffered any actual damages, which CPS denies, such damages were not directly or proximately caused by CPS, but rather by an intervening or superseding cause, or by the acts or omissions of another person, entity, or CPS herself, for who or for which CPS are not responsible.

4.      Plaintiff's claims are barred by the doctrine of unclean hands.

5.      CPS complied with the Fair Credit Reporting Act and is entitled to each and every defense stated in the Act, including any and all limitations of liability.

WHEREFORE, Consumer Portfolio Services, Inc. respectfully requests that the Court dismiss Plaintiff Jamie John-Crane's Complaint with prejudice or, alternatively, enter judgment in CPS's favor and against Plaintiff, award CPS its costs of suit and attorneys' fees, and award CPS any other further relief the Court deems just and equitable.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Counter-Plaintiff and Third-Party Plaintiff Consumer Portfolio Services, Inc. ("CPS"), by counsel, states as its Counterclaim against Counter-Defendant Jamie John-Crane ("John-Crane"), and states as its Third-Party Complaint against Third-Party Defendants Jamie John-Crane, as Trustee for Kids with Adult Money Trust (1) ("Trust"), John-Crane Private Bank E&T ("John-Crane Bank"), and Oregon Department of Transportation, Driver and Motor Vehicle Services ("DMV"),[1] as follows:

### Nature of the Action

1.     By this action, CPS seeks a declaratory judgment pursuant to ORS 28.010, declaring that CPS's lien on John-Crane's vehicle was fraudulently released, revoking any certificate of title issued after the fraudulent release of CPS's lien, and directing new title to be issued reinstating CPS's lien. CPS also seeks judgment against John-Crane for breach of contract, a judgment in detinue for the return of the vehicle or for its value plus damages for its wrongful detention, and a judgment for slander of title.

### Parties

2.     CPS is an automobile financing company organized under the laws of the State of California that transacts business in Oregon and elsewhere.

3.     John-Crane is a resident of Lane County, Oregon.

---

[1] See Paragraph 6 below as to the DMV's limited involvement in this matter.

4.      Upon information and belief, Kids with Adult Money Trust (1) may or may not be an actual trust created by John-Crane, with a mailing address listed as 514 Americas Way, #22153, Box Elder, South Dakota 57719. Upon information and belief based on Exhibit 2 attached to John-Crane's Complaint, John-Crane is a trustee for the Trust.

5.      John-Crane Bank is a company based in Eugene, Oregon, and is registered with the United States Department of Transportation, USDOT number 4273958. John-Crane Bank is not registered with the Oregon Division of Financial Regulation or the Oregon Secretary of State. On information and belief, John-Crane is a purported owner or officer of John-Crane Bank.

6.      The DMV is charged with the authority to issue certificates of title for vehicles in the State of Oregon. CPS does not seek any damages or other relief from the DMV, and the DMV is named as a defendant solely because it would be the entity that would issue a new certificate of title, as requested herein.

### Background

7.      On October 4, 2024, John-Crane purchased a 2023 Jeep Gladiator with VIN ending -2621 ("Vehicle") from Gladstone Mitsubishi ("Gladstone"), located at 18500 SE McLoughlin Blvd., Milwaukie, Oregon 97267, and financed that purchase by entering into a Retail Installment Contract ("Contract") with Gladstone. A true and accurate copy of the Contract is attached as Exhibit A.

8.      Gladstone subsequently assigned the Contract to CPS, including all of Gladstone's rights, title, and interest in the Contract, thereby providing CPS with a security interest in the Vehicle. A true and accurate copy of Gladstone's assignment of the Contract to CPS is attached as Exhibit B.

9.      Under the terms of the Contract, John-Crane was obligated to make 78 monthly payments of $807.59 beginning November 15, 2024.

10.     Under the terms of the Contract, John-Crane agreed that she would not sell, rent, lease, or transfer any interest in the Vehicle or the Contract without CPS's written permission.

11.     Under the terms of the Contract, CPS is entitled to possession of the Vehicle if John-Crane fails to fulfill any obligations or otherwise fails to comply with the Contract.

12.     As part of this transaction, John-Crane signed a title application to the DMV, which lists the Vehicle by its VIN number, identifies John-Crane as the owner, and identifies CPS as the sole lienholder. A true and accurate copy of the title application is attached as Exhibit C.

13.     On November 18, 2024, the DMV issued a certificate of title ("Certificate of Title") for the Vehicle (title number OR0006373956, control number 7121970). A true and accurate copy of the Certificate of Title is attached as Exhibit D.

14.     The Certificate of Title reflects CPS's security interest in the Vehicle by listing CPS as the first and only lienholder.

15.     Pursuant to ORS 803.097, the title application and the Certificate of Title constitute perfection of CPS's security interest in the vehicle.

16.     On October 25, 2024, John-Crane apparently filed with the California Secretary of State a UCC 1 Financing Statement identifying herself as the debtor and CPS as the secured party. The financing statement states that John-Crane "asserts a first priority lien against the collateral as the Grantor and Registered Owner," that she "holds equitable title to the collateral and asserts ownership over the promissory note," and that CPS is purportedly the "Trustee

responsible for administrating that obligation." A true and accurate copy of the October 25, 2024, financing statement is attached as Exhibit E.

17.     CPS has not agreed to act as the "Trustee" and was not even aware that John-Crane had purportedly and unilaterally designated CPS to act as a trustee.

18.     On December 2, 2024, John-Crane filed with the California Secretary of State a UCC 1 Financing Statement identifying the Trust as the debtor, and the John-Crane Bank as the secured party. The financing statement claims that "ownership of the vehicle was transferred from Jamie-John Crane to [the Trust] on October 4, 2024." Notably, attached as Exhibit 2 to John-Crane's Complaint is a "Conveyance of Vehicle," which purports to transfer her interest in the Vehicle to the Trust.

19.      CPS did not provide consent to John-Crane to transfer any ownership interest in the Vehicle.

20.     The December 2, 2024, financing statement states that it supposedly "perfects" the Trust's "first priority" security interest in the Vehicle, and that the Trust, "as owner, with Hill Valley Ministries & Jamie John-Crane acting as Trustees, hold[s] all legal and equitable titles for this vehicle." The financing statement also claims that John-Crane Bank "holds a valid and enforceable lien on this vehicle." A true and accurate copy of the December 2, 2024, financing statement is attached as Exhibit F.

21.     John-Crane's Complaint alleges that she filed the above-referenced California UCC 1 financing statements, claims that CPS had failed to perfect its security interest in the Vehicle, and contends that CPS "falsely asserts a lien" on the Vehicle title.

22.     On April 7, 2025, CPS learned that its lien had been removed from the title for the Vehicle on or about March 10, 2025, and that the DMV issued a new certificate of title listing the Trust as the owner of the Vehicle and John-Crane Bank as the only lienholder.

23.     It is CPS's understanding that in order to update title with the DMV and to release a lien, the owner of the vehicle must either provide the original title with the lienholder's official stamp stating that the lien is released, or provide the DMV with a letter from the lienholder stating that it has released its lien.

24.     CPS has not released its lien on the Vehicle. CPS has not provided its official stamp on the Certificate of Title stating that it has released its lien on the Vehicle. And CPS has not issued any letter stating that it has released its lien on the Vehicle.

25.     Accordingly, CPS is informed and believes that John-Crane submitted a fraudulent lien release to the DMV, falsely stating that CPS released its lien on the Vehicle.

26.     John-Crane has never made any payments to CPS under the Contract or otherwise satisfied the amount owing for the Vehicle.

27.     Moreover, John-Crane purported to transfer ownership of the Vehicle without CPS's consent.

28.     Accordingly, John-Crane is in default under the Contract.

29.     Hence, CPS is entitled to all available remedies under the Contract, including immediate possession of the Vehicle.

**Count I—Declaratory Judgment**
(Against Jamie John-Crane, Jamie John-Crane as Trustee for
Kids With Adult Money Trust (1), John-Crane Private Bank E&T, and
Oregon Department of Transportation, Driver and Motor Vehicle Services)

30.     CPS re-alleges and incorporates by reference paragraphs 1 through 29.

31.     CPS is entitled to a declaration that its lien on the Vehicle title was improperly released and remains valid.

32.     In order to restore CPS's lien on the Vehicle's title, CPS requires an Order from the Court revoking any title issued after the fraudulent release of CPS's lien and directing the issuance of a new title that reinstates CPS's original lien.

33.     CPS has named the DMV as a defendant in this action only to obtain this new title pursuant to the Order requested from the Court.

WHEREFORE, Counter-Plaintiff/Third-Party Plaintiff Consumer Portfolio Services, Inc. respectfully requests that the Court enter judgment in its favor and against Counter-Defendant Jamie John-Crane and Third-Party Defendants Jamie John-Crane, as Trustee for Kids With Adult Money Trust (1), John-Crane Private Bank E&T, and Oregon Department of Transportation, Driver and Motor Vehicle Services:

A.     Declaring that CPS's lien on the Vehicle was fraudulently released and remains valid;

B.     Revoking any title to the Vehicle issued after the fraudulent release of CPS's lien which does not reflect CPS's lien;

C.     Declaring a new title to the Vehicle is to be issued that supersedes all previous titles and reinstates the information contained in title number 7121970; and

D.     Awarding CPS any further relief the Court deems just and equitable.

## Count II—Breach of Contract
(Against Jamie John-Crane)

34.     CPS re-alleges and incorporates by reference paragraphs 1 through 33.

35.     John-Crane is in default under and breached the Contract by, *inter alia*, failing to make payments due to CPS, transferring ownership of the Vehicle without CPS's consent, and improperly releasing CPS's lien.

17

36.      As a result of John-Crane's breach, CPS has suffered damages and is entitled to all available remedies under the Contract, including immediate possession of the Vehicle.

37.      Under the terms of the Contract, John-Crane agreed to pay for CPS's attorneys' fees and costs associated with collections under the Contract.

WHEREFORE, Counter-Plaintiff Consumer Portfolio Services, Inc. respectfully requests that the Court enter judgment in its favor and against Counter-Defendant Jamie John-Crane:

A.      Declaring that CPS is entitled to immediate possession of the Vehicle;

B.      Awarding CPS its damages resulting from John-Crane's breach of contract;

C.      Awarding CPS its attorneys' fees and costs; and

D.      Awarding CPS any further relief the Court deems just and equitable.

### Count III—Detinue
(Against Jamie John-Crane, as Trustee for Kids With Adult Money Trust (1))

38.      CPS re-alleges and incorporates by reference paragraphs 1 through 37.

39.      The Trust has wrongfully been made the purported owner of the Vehicle. Therefore, on information and belief, the Trust or Jamie-John Crane as Trustee is in possession of the Vehicle.

40.      CPS is entitled to immediate possession of the Vehicle.

WHEREFORE, Third-Party Plaintiff Consumer Portfolio Services, Inc. respectfully requests that the Court enter judgment in its favor and against Third-Party Defendant Jamie John-Crane, as Trustee for Kids With Adult Money Trust (1):

A.      Declaring that CPS is entitled to immediate possession of the Vehicle;

B.      Ordering the Trust to deliver to Vehicle to CPS or, alternatively, awarding CPS the sum of $38,437.42 for the value of the Vehicle, plus additional damages for its wrongful detention; and

C.      Awarding CPS any further relief the Court deems just and equitable.

**Count IV—Slander of Title**
(Against Jamie John-Crane, Jamie John-Crane as Trustee for Kids With
Adult Money Trust (1), and John-Crane Private Bank E&T)

41.    CPS re-alleges and incorporates by reference paragraphs 1 through 40.

42.    In falsely asserting to the DMV that CPS had released its lien, John-Crane has published a false statement to a third party which disparages CPS's position as the priority lienholder on the Vehicle title.

43.    In falsely asserting to the DMV that CPS had released its lien, the Trust has published a false statement to a third party which disparages CPS's position as the priority lienholder on the Vehicle title.

44.    In falsely asserting to the DMV that CPS had released its lien, John-Crane Bank has published a false statement to a third party which disparages CPS's position as the priority lienholder on the Vehicle title.

45.    John-Crane, the Trust, and John-Crane Bank's actions were done in an intentional and coordinated fashion and with malice, to avoid John-Crane's payment obligations pursuant to the Contract.

46.    CPS has suffered, and continues to suffer, special damages, as it is unable to enforce its rights under the Contract—including to take possession of the Vehicle—while the title is clouded.

WHEREFORE, Counter-Plaintiff/Third-Party Plaintiff Consumer Portfolio Services, Inc. respectfully requests that the Court enter judgment in its favor and against Counter-Defendant Jamie John-Crane, and Third-Party Defendants Jamie John-Crane, as Trustee for Kids With Adult Money Trust (1), and John-Crane Private Bank E&T:

A.    Finding that Defendants fraudulently caused CPS's lien to be released;

B.      Declaring a new title to the Vehicle is to be issued that supersedes all previous titles and reinstates the information contained in title number 7121970;

C.      Awarding CPS its damages for Defendants' slander of title;

D.      Awarding CPS punitive damages for Defendants' intentional misconduct; and

E.      Awarding CPS any further relief the Court deems just and equitable.

Respectfully submitted,

PILGRIM CHRISTAKIS LLP

*/s/ Ke Liu*
Ke Liu (admitted *pro hac vice*)
kliu@pilgrimchristakis.com
Pilgrim Christakis LLP
One South Dearborn Street, Suite 1420
Chicago, Illinois 60603
Ph.: (312) 445-0488

SABIDO LAW, LLC

Robert E. Sabido, OSB No. 964168
robert@sabidolawllc.com
9385 SW Locust Street
Tigard, Oregon 97223
Tel: (971) 302-6236
Fax: (503) 974-1673

*Attorneys for Defendant*
*Consumer Portfolio Services, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 10, 2025, I caused a true and accurate copy of the foregoing document to be filed using the CM/ECF System, which will electronically serve all parties of record.

/s/ *Ke Liu*